DAVID A. HUBBERT
Deputy Assistant Attorney General

AMY MATCHISON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
Telephone:   (202) 307-6422
Fax:              (202) 307-0054
Email:   Amy.T.Matchison@usdoj.gov
            Western.Taxcivil@usdoj.gov

*Attorneys for United States of America*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, | Case No. 2:24-cv-00355-PHX-GMS |
| Plaintiff, | |
| v. | **DECLARATION OF DOUGLAS W. O'DONNELL** |
| United States Internal Revenue Service; Daniel I. Werfel, in his official capacity as Commissioner of the United States Internal Revenue Service; the United States Department of Treasury; Janet L. Yellen, in her official capacity as Secretary of the United States Department of Treasury; and the United States of America, | |
| Defendants. | |

I, Douglas W. O'Donnell, pursuant to 28 U.S.C. § 1746, declare that:

1. The Internal Revenue Service (IRS) is currently divided into two groups of organizations: the Services and Enforcement organizations and the Operations Support organizations. Each group is headed by a Deputy Commissioner who reports directly to the Commissioner for the Internal Revenue Service. I am the Deputy Commissioner for

1

Services and Enforcement (DCSE). The DCSE oversees the four taxpayer-focused IRS operating divisions, including Wage & Investment, Large Business & International, Small Business/Self-Employed and Tax Exempt and Government Entities. The DCSE also oversees the IRS Criminal Investigation Division, Enterprise Digitalization and Case Management Office, Office of Professional Responsibility, Online Services, the Return Preparer Office and IRS Whistleblower Office.

2. The facts set forth in the paragraphs below are based on my review of the State of Arizona's complaint (ECF No. 1) and motion for preliminary injunction and supporting documents (ECF No. 18) filed in this action as well as my personal knowledge of IRS operations.

3. The harm to tax administration from a preliminary injunction enjoining the IRS from assessing or collecting federal income tax on the payments made by the State of Arizona to Arizona residents in 2023 (the "State Payments") would be significant.

4. If imposed, this injunction would require the IRS to identify each Arizona taxpayer who has reported a State Payment on his or her federal income tax return, determine the amount of the payment that individual reported, redetermine that individual's income tax liability as if the State Payment were not taxable, and process a refund to the extent the redetermined liability was different from the amount reported.

5. The IRS cannot on its own identify all the individuals who filed a return reporting income attributable to a State Payment or the amount that the individuals reported, because any income amount attributable to a State Payment is not specifically identified on the returns.

6. Even though Arizona may have filed Forms 1099-MISC identifying all taxpayers who received State Payments, this is not sufficient because it would only serve to identify the universe of taxpayers who may have potentially reported a State Payment and not those who did report one. The Forms 1099-MISC could also report other payments from the State.

7. There is no designated line on the Form 1040, *U.S. Individual Income Tax Return*, for taxpayers to report these State Payments. Taxpayers could conceivably report

2

the State Payments as "other earned income" on line 1h of the Form 1040, or as "additional income from Schedule 1, line 10" on line 8 of the Form 1040. Taxpayers could also conceivably report the State Payments as "taxable refunds, credits, or offsets of state and local income taxes" on line 1 of Part 1 of Schedule 1 of the Form 1040, *Additional Income and Adjustments to Income*; or as "other income" on line 8z of Part 1 of the Schedule 1 of the Form 1040.

8. Taxpayers report the ultimate aggregate amounts on all of the lines described in paragraph 7. Only for line 8z of Part 1 of the Schedule 1 of the Form 1040 do the form and instructions direct taxpayers to list the type or amount of each payment reported on that line. Line 8z of Part 1 of Schedule 1 of the Form 1040 asks taxpayers to list the type and amount of the amount, and the instructions advise the taxpayer to use a statement, if necessary. However, it is unlikely that a return would be rejected for failure to list the type and amount of each amount of income reported on line 8z. Additionally, the instructions for line 8z do not contain specific instructions on how to describe these State Payments. Accordingly, even if a taxpayer reported a State Payment on line 8z, there is not a uniform reference to describe these payments for the IRS to search for. For these reasons, determining all of the affected taxpayers and the amounts reported that were attributable to the State Payments is impossible from the Form 1040 and Schedule 1 of the Form 1040 alone.

9. The IRS could only re-determine the affected taxpayers' proper tax liability as if the State Payments were not taxable, after returns were filed and processed, and only if the taxpayers and payments could be identified from data on the returns. A broader re-determination process is generally only developed and implemented after the completion of the filing season.

10. In addition to the IRS not being able to readily identify the affected taxpayers and how much was reported (or not reported), the preliminary injunction would require the IRS to divert resources during the filing season, which will harm service to other taxpayers.

11. The requested relief might require taxpayers to file superseding or amended returns, raising the likelihood of mistakes. A superseding return is one that is filed after the originally filed return but before the due date of that return and replaces the originally filed return. An amended return is used to make changes to the originally filed return, which remains in effect; it must be filed within three years of the original filing date or within two years of tax payment, whichever is later. Amid the ongoing burdens of filing season administration, the IRS would have to divert resources that should be devoted to processing returns and refunds to examine these superseding or amended returns.

12. Additionally, any measures the IRS takes to implement preliminary injunctive relief might only be in place temporarily, given the possibility that the government will ultimately prevail. Even if Plaintiff prevails, the IRS might have to make further changes or adjustments to its efforts following the end of filing season given the uncertainty surrounding and difficulty of identifying the affected population.

13. This refocusing of resources would come at the expense of the broader American public, which would have fewer IRS resources devoted to the processing of their returns and refunds.

14. Additionally, the preliminary relief Arizona seeks could result in similarly situated taxpayers being treated differently depending on when they file. Because filing season is underway, some of the affected taxpayers will inevitably have already filed their income tax returns and some will not. The requested relief would have to be implemented differently—and on different timing—for these two groups, as explained below.

15. Given that filing season is half over, many taxpayers have already filed their returns, possibly paying tax on their State Payments. If an injunction is granted, those taxpayers might have to file superseding or amended returns to correct the reported amount of income. These new returns would require time to process, delaying the processing of the affected taxpayers' returns.

16. Arizona taxpayers filing later or not reporting or paying tax on their State Payments would be advantaged relative to the earlier filing and reporting taxpayers,

because they would not have to file superseding or amended returns or wait for the IRS to stand up an *ad hoc* refund program that may or may not return the relevant taxes to them before the litigation concludes.

17. It is not in the public interest to disadvantage taxpayers for filing early and conservatively reporting amounts reported to them as income.

18. If the requested injunction is denied and the Court ultimately resolves this case in Arizona's favor, determining that the State Payment is not taxable, the IRS will develop and publish communications, and work with the appropriate stakeholders, to ensure that affected taxpayers have instructions on how to receive the appropriate relief.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 14th day of March 2024, in Washington, District of Columbia.

DOUGLAS W. O'DONNELL
Deputy Commissioner for Services and Enforcement
Internal Revenue Service