**KRISTIN K. MAYES**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Joshua D. Bendor (Bar No. 031908)
Alexander W. Samuels (Bar No. 028926)
Clinten N. Garrett (Bar No. 022457)
Kathryn E. Boughton (Bar No. 036105)
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004-1592
(602) 542-3333
Joshua.Bendor@azag.gov
Alexander.Samuels@azag.gov
Clinten.Garrett@azag.gov
Kathryn.Boughton@azag.gov
ACL@azag.gov

*Attorneys for Plaintiff*
*State of Arizona*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona,<br><br>Plaintiff,<br>v.<br><br>United States Internal Revenue Service; Daniel I. Werfel, in his official capacity as Commissioner of the United States Internal Revenue Service; the United States Department of Treasury; Janet L. Yellen, in her official capacity as Secretary of the United States Department of Treasury; and the United States of America,<br><br>Defendants. | No. CV-24-00355-PHX-GMS<br><br>**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>(Hon. G. Murray Snow)<br><br>Oral Argument Requested |

# INTRODUCTION

The IRS's opposition brief confirms that its determination subjecting the Arizona Tax Rebate to federal taxation is arbitrary and unlawful in multiple respects. The IRS understood—and repeatedly affirmed—that tax refunds are generally not a taxable accession to wealth, yet it asserted that the Tax Rebate was nonetheless taxable *in full* because it was not *limited* to taxes actually paid. Now, however, the IRS does not dispute that Commissioner Werfel mischaracterized the sole case on which the IRS relied for this erroneous position—and that, in fact, this case plainly holds that only the "excess portion" of a refund may be taxed. This alone establishes that the IRS's determination lacked any colorable legal basis and compels entry of an injunction.

Nor does the IRS offer any meaningful justification for its unlawful denial of the general welfare and disaster relief exclusions. The IRS chose to issue public "guidance" in early 2023, and that guidance approved exclusions for refunds with no income caps while expressly stating that pandemic-related payments were only an "example" of those that qualified. The IRS then reaffirmed those determinations in Notice 2023-56. The IRS's bare assertions concerning its discriminatory treatment of Arizona continue to contradict that guidance, in violation of its pledge to "not take positions inconsistent with its subregulatory guidance when such guidance is in effect." *See* Dept. of Treasury, *Policy Statement on The Tax Regulatory Process* (Mar. 5, 2019).

Unable to deal with the merits, the IRS focuses on standing and jurisdictional arguments. But in *New York v. Yellen*, 15 F.4th 569 (2d Cir. 2021), the Second Circuit rejected these same arguments on materially analogous facts. And Arizona's injury is actually *more* concrete than the alleged injury in *Yellen*. The IRS has also now taken to characterizing its unlawful determination as "advice," while suggesting that it might not enforce it, after all. That is unacceptably flippant; the IRS made a wrongful determination with force of law, and Arizona and its taxpayers are not legal guinea pigs.

The Court should grant the motion.

**ARGUMENT**

**I.     The IRS's standing and jurisdictional arguments are meritless.**

A party has standing if it suffers "an injury in fact … that is fairly traceable to the challenged conduct of the defendant, and … that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The State unquestionably has standing here, and the IRS's related arguments all fail.

   **A.     Arizona has standing to bring its claims.**

The IRS's effort to minimize the State's injury here does not survive even minimal scrutiny. Contrary to the IRS's assertion (at 6), the State did not allege that it "may" have lost sales tax revenue; rather, it alleged—and supported with a sworn declaration—that the IRS's unlawful action is costing the State approximately $480,000 in lost transaction privilege tax (i.e., sales tax) revenue. Jacobs Decl. (Doc. 18-2) ¶ 6.

Even as the IRS quibbles about the value of the State's damages, it also asserts that the State is only litigating "personal claims" of taxpayers. On the contrary, Arizona seeks "to vindicate [its] sovereign or quasi-sovereign interests, not to litigate the personal claims of [its] taxpayers"—as the IRS concedes (at 6) to be cognizable. The further assertion (at 7) that the harm "was self-inflicted because Arizona's legislature chose a form of payment that didn't satisfy longstanding principles for exclusion" is a circular merits argument, not a real standing argument.

The IRS does not dispute that in *New York v. Yellen*, 15 F.4th 569, 575–77 (2d Cir. 2021), the Second Circuit affirmed a well-reasoned Southern District of New York case finding that New York and other states had standing to sue the government for imposing a new cap on the state and local tax ("SALT") deduction. The IRS, however, argues (at 7) that the plaintiff states in *Yellen* "alleged a *direct* injury to their taxing authority separate from the higher taxes their resident would pay because *Congress* decreased the deduction for state and local taxes," while Arizona has supposedly "only alleged an injury derivative of its residents paying higher taxes."

On the contrary, Arizona's injury is, if anything, more direct than the injury that supported standing in *Yellen*. There, the states alleged multiple sovereign injuries, but the district court focused on the claim that "[b]y capping the deductibility of property taxes, the cap makes homeownership more expensive and decreases the value of real estate," thereby causing "decreased household spending and delayed home sales" that would reduce state revenue "from sales taxes and real estate transfer taxes." *New York v. Mnuchin*, 408 F.Supp.3d 399, 408–09 (S.D.N.Y. 2019) (cleaned up). One could imagine confounding factors there; for example, if the economy were coming out of a recession, property values might go up irrespective of the SALT cap. Yet, the Second Circuit agreed that "the chain of economic events that the Plaintiff States have proffered … [is] realistic, and the challenged action's effect on their residents' decisions seems to us entirely predictable." *Yellen,* 15 F.4th at 577 (cleaned up).

Here, the "chain" is more like a single link; the IRS is unlawfully taking approximately $20.8 million out of Arizonans' pockets, meaning that residents will therefore not spend that money in a way that would otherwise generate approximately $480,000 in sales tax revenue. A state's "loss of specific tax revenues" is a "direct injury" that supports standing. *Wyoming v. Oklahoma*, 502 U.S. 437, 448 (1992); *Mnuchin*, 408 F.Supp.3d at 409 ("states, no less than private citizens, are entitled to invoke" expected financial loss to support standing).

Arizona—just like the states in *Yellen*—quantified specific damages caused by the loss of specific State tax revenue. Jacobs Decl. ¶ 6. Unable to genuinely dispute that Arizona has done so, the IRS faults Arizona (at 7) for not having "robust expert declarations." But the IRS argues only by characterization ("speculative," "conjectural," "hypothetical") without an iota of controverting evidence. Arizona, being one state, submitted one declaration. And Arizona's declarant, Karen Jacobs, has "worked as an

3

economist for the Department [of Revenue] for 29 years, providing fiscal analyses and forecasts for the agency." Jacobs Decl. ¶ 1.[1]

The IRS also makes the extraordinary claim (at 7) that "many factors affect whether Arizona taxpayers would pay federal income tax on" the Rebates, including whether "they report the payments as income" and whether "the IRS pursues any adjustments if they do not report the payment as income." In other words, if Arizonans break the law (as the IRS has determined it to be), maybe they will not be subjected to civil or criminal penalties after all. This is truly outrageous; if the IRS did not intend to enforce its unlawful determination, it should not have burdened Arizonans with it.

The IRS further asserts (at 8) that "it is hard to see how the IRS advice"—the Commissioner's *determination* is now only *advice* in the universe of this briefing—"could have had any influence on spending decisions for cash Arizonans received before the advice was even given." This is obtuse; the harm isn't based on spending decisions last year, but rather on money being siphoned from Arizona in 2024. And contrary to the IRS's further baffling assertion (*id.*), this is "redressable" because the Court can enjoin it. The injury Arizona will "suffer as a result of the" unlawful taxation is "traceable to the Government's enforcement of [the taxation] and so would be remedied by an injunction that bars enforcement." *Mnuchin*, 408 F.Supp.3d at 408. This is "a direct, tangible injury to [Arizona's] proprietary or sovereign interests." *Id.* (cleaned up). And it is also supported by "basic economic logic." *Id.* at 410 (cleaned up).

Arizona's additional sovereign injuries are also more tangible than those alleged in *Yellen*, where the states challenged a SALT deduction cap enacted by Congress that facially applied equally to all states (which is why their claim was dismissed on the merits). *Mnuchin*, 408 F.Supp.3d at 405–06. Here, the IRS administratively determined that 21 state payments and refunds were nontaxable in whole or part, then discriminated

---

[1] Ms. Jacobs is available to attend the April 2 argument and provide testimony regarding her analysis in the event that the Court would find her testimony useful.

4

against Arizona when it enacted the Tax Rebate three months later. Thus, the IRS is taxing a rebate *issued by a State* (frustrating State policy), while enlisting *the State* to issue Form 1099s and broadcast the decision to taxpayers. Jacobs Decl. ¶ 7. If the IRS has the power to impose this disparate burden on Arizona through administrative action, of course Arizona has the standing to challenge it.

### B. The IRS's Anti-Injunction Act ("AIA") and Declaratory Judgment Act ("DJA") arguments fail.

As the IRS previews for the Court (at 11), its AIA and DJA arguments fail under forty-year-old Supreme Court precedent holding that the AIA does not bar "actions brought by aggrieved parties for whom [Congress] has not provided an alternative remedy." *South Carolina v. Regan*, 465 U.S. 367, 378 (1984). Because Arizona has no alternative remedy here, its claims fall within the *Regan* exception.

*Yellen* already disposed of the IRS's efforts to distinguish *Regan*. 15 F.4th at 578 ("[T]he claims of the Plaintiff States and those of South Carolina in *Regan* are materially the same."). The AIA exception that *Regan* carves out is not "narrow"; rather, as *Regan* explained, "there is no guarantee that a taxpayer willing to challenge the disputed tax will present the relevant arguments on [the State's] behalf, as opposed to arguments that highlight the taxpayer's more individual interests." *Id.* (cleaned up). Additionally, taxpayer suits would not "afford the State[] … an opportunity to assert the sovereign interests that are threatened" by the unlawful tax. *Mnuchin*, 408 F.Supp.3d at 412. Thus, irrespective of whether "Arizona taxpayers … have a direct economic interest in challenging the IRS's tax treatment" (Opp. at 12), Arizona is "not obliged to find taxpayers willing to litigate their claims and trust that those taxpayers will litigate them effectively." *Yellen*, 15 F.4th at 578; *Mnuchin*, 408 F.Supp.3d at 412 ("States … need not cross their fingers and hope that future refund actions brought by third parties will adequately address their" claims). It is therefore "irrelevant that a third party may have an incentive to challenge the [alleged unlawful taxation] in a refund suit." *Yellen*, 15 F.4th at 578.

5

*Yellen* also explains why *Confederated Tribes & Bands of Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau*, 843 F.3d 810 (9th Cir. 2016) is inapposite. "In *Yakama Indian Nation*, a Native American tribe, a tobacco manufacturer organized under tribal laws, and the individual owner of the manufacturer (himself a tribal member) jointly sued for injunctive and declaratory relief" to bar a federal excise tax on the manufacturer. 15 F.4th at 579. Thus, "the Yakama Nation's interest in avoiding the taxation of its member was 'inextricably intertwined' with the interest of the two other plaintiffs 'in avoiding their own taxation.'" *Id.* (quoting *Yakama*, 843 F.3d at 816). Here, as in *Yellen*, there are no taxpayers in the litigation, and individual taxpayers could not "restore the lost state tax revenue" or seek redress for the State's sovereign injury. *Id.*[2]

*Regan* did not reach the DJA, *see* 465 U.S. at 370 n.2, but other courts have understood the *Regan* exception to apply equally to the DJA. *See, e.g.*, *Yamaha Motor Corp., USA v. United States*, 779 F.Supp 610, 614 (D.D.C. 1991) (explaining that *Regan* creates an "exception to the bar of the Anti–Injunction and Declaratory Judgment Acts, opening the courts only to parties in pre-enforcement tax disputes for whom [Congress] has not provided an alternative remedy") (cleaned up); *Burns v. McGill*, No. 3:98-1150, 1999 WL 1090818, at *4 (M.D. Tenn. Oct. 13, 1999) (same). In any event, given that it is undisputed that a party may sue "to restrain the assessment or collection of [a] tax" if the *Regan* or *Williams* exceptions apply, *see* IRS, *Suits Against the United States* ("Revenue Manual"), at § 5.17.5.4(2), https://www.irs.gov/irm/part5/irm_05-017-005, it is immaterial whether declaratory relief is separately available.

**C.   The IRS's sovereign immunity and APA arguments fail.**

As the IRS's Revenue Manual also makes clear, its sovereign immunity argument (at 8-9) fails for the same reason as its AIA argument. *See* Revenue Manual, at §§

---

[2] For reasons discussed in the State's Motion and in Section II, Arizona's claim also falls within the separate exception established by *Enochs v. Williams Packing & Navigation Co.*: equity jurisdiction otherwise exists, and "under no circumstances could the Government ultimately prevail." 370 U.S. 1, 7 (1962).

6

5.17.5.2, 5.17.5.4(2) (discussing sovereign immunity and explaining that *Regan* and *Williams* established exceptions to the AIA's general bar on suits to restrain tax collection). The IRS's argument also fails because 5 U.S.C. § 702 "enacted a broad, unqualified waiver for all non-monetary claims for relief against federal agencies." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1172 (9th Cir. 2017). And contrary to the IRS's contention that this waiver is limited to APA claims, it applies broadly "in contexts where the plaintiff seeks 'relief other than money damages' for claims 'that an agency or an officer or employee thereof acted or failed to act in an official capacity.'" *Williams v. Bernhardt*, No. CV-20-02277-PHX-MTL, 2021 WL 2555435, at *2 (D. Ariz. June 22, 2021) (citation omitted); *see also Navajo Nation*, 876 F.3d at 1172 n.36 (collecting cases from other circuits holding similarly).

The IRS's related effort (at 9-10) to characterize its determination as something other than "final" for the purpose of APA review is meritless. An action is final if it (1) "mark[s] the consummation of the agency's decision-making process"; and (2) is "one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–178 (1997) (cleaned up). "The finality element must be interpreted in a pragmatic and flexible manner." *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (assessing finality based on whether action is a definitive statement of agency's position, has a direct and immediate effect on operations of party seeking review, or if immediate compliance is expected).

Here, the Commissioner made a "*determination* that the 2023 Arizona Families Tax Rebate *payments constitute income* to the recipients *for federal income tax purposes*" and stated that the "IRS is *applying the rules reflected in this letter … to Arizona*." Boughton Decl. (Doc 18-1) Exhibit ("Ex.") 12 (emphasis added) (letter from IRS Commissioner Werfel to Attorney General Mayes). The IRS's new litigation refrain (at 10) that it merely gave "advice" that "expressed the IRS's administrative position" would come as news to the Arizona Department of Revenue and Arizona taxpayers. *See* Ex. 13 (Department of Revenue webpage conveying the "determin[ation]" to taxpayers).

7

Contrary to the IRS's airbrushing, a letter that establishes an agency's official position on how the law applies to a party's specific facts is a final determination. *See, e.g.*, *Ipsen Biopharmaceuticals, Inc. v. Azar*, 943 F.3d 953, 959 (D.C. Cir. 2019) (finding letter applying law to party's specific facts was final) (cleaned up).[3]

## II. The relevant factors all support entry of a preliminary injunction.

Having mischaracterized its key authority, the IRS lacks any colorable legal or equitable grounds to oppose the motion.

### A. The IRS has no genuine response on the merits.

#### 1. A rebate of taxes paid is not an accession to wealth.

The IRS recognizes that "[m]ost taxpayers receiving state tax refunds do not have to include the state tax refund in income for federal tax purposes." Ex. 10 at 1 (IR-2023-158) (bold omitted); *Tempel v. Comm'r*, 136 T.C. 341, 350 (2011) ("A reduction in a tax liability is not an accession to wealth.").

In denying Arizona taxpayers the benefit of this rule, Commissioner Werfel asserted that *Maines v. Commissioner*, 144 T.C. 123 (2015)—his sole authority—had "held that two [tax] credits that were not limited to the amount of taxes previously paid by the taxpayers did *not* constitute refunds for federal income tax purposes." Ex. 12 at 3.[4] But this was false (Mot. at 9-10); in reality, *Maines* held that only the "*excess portion*" of a tax refund "that remains after first reducing state-tax liability . . . is an accession to the [taxpayer's] wealth, and [includible] in . . . federal gross income." 144 T.C. at 136 (emphasis added).

---

[3] *See also, e.g.*, *Idaho Rivers United v. U.S. Forest Serv.*, 857 F. Supp. 2d 1020, 1025–26 (D. Idaho 2012) (letters rejecting request and allowing for certain conduct to continue had "both a practical effect and a legal consequence"); *S. Utah Wilderness All. v. Off. of Surface Mining Reclamation & Enf't*, 620 F.3d 1227, 1244 (10th Cir. 2010) (letter denying request for a discrete agency action was reviewable as final action).

[4] In combining Commissioner Werfel's letters in a collection of exhibits, his electronic signature appears to have been inadvertently removed. *See* Exs. 12, 14, 15.

8

The IRS fails to even address (and thereby concedes) its error, and now cites only its own Notice 2023-56 as the "authority" for its position.[5] Opp. at 14. In doing so, the opposition brief confirms that the IRS lacks any colorable justification for unlawfully treating a return of taxes paid as an accession to wealth.

### 2. The IRS still cannot offer any reasoned basis for its denial of general welfare and disaster relief exclusions.

Arizona argued in its motion (at 11-14) that the IRS and Commissioner Werfel had arbitrarily invented criteria for the general welfare exclusion that lack historical support and contradict the IRS's recent guidance. In opposition, the IRS rotely recites the same arbitrary criteria that lack historical support and contradict recent guidance.

The IRS admits (at 15) that the general welfare exclusion has been applied to payments targeted at "food, medical care, housing, personal property, transportation," etc., and it acknowledges that Arizona explicitly enacted the Tax Rebate because "gas, groceries and other necessities [were] out of reach for many Arizonans" due to the inflationary crisis resulting from the COVID-19 pandemic. Yet, the IRS asserts (at 15) that the Tax Rebate is nonetheless taxable because it was available "above the [income] limit of what is generally considered to be covered by the general welfare exclusion" and was limited to individuals with tax liability. Tellingly, the IRS fails to offer a single citation for either criteria.

What income limit "is generally considered to be covered" by the exclusion? The IRS still will not (and cannot) say, because that would mean acknowledging that IR-2023-23—the guidance issued three months before Arizona enacted the Tax Rebate—must inform what is "generally" covered. Ex. 1; *see also, e.g.*, Ex. 2 (Colorado: no income cap

---

[5] "Notice 2023-38 I.R.B. 824" is part of the formal cite for Notice 2023-56, not additional authority. The IRS also asserts in a footnote (at 14 n.2) that the Arizona Legislature understood that the Tax Rebate "might" be federally taxable. The provision the IRS cites (Ex. 8 at § 3(I)) provides that in the event the Rebate is deemed federally taxable, it is not, in any event, taxable by the State. This reflects contemplation of a contingency, not any expectation that the Rebate would be taxable.

and no dependents requirement); Ex. 7 (California: $500,000 income cap and no dependents requirement). The crux of the IRS's litigation position (at 16-17), however, is that it is entitled to be as erratic as it wishes to be—i.e., that "[n]o matter what the IRS determined for the 21 states in 2022," Arizona's Tax Rebate payments must "be evaluated on their own."

This is indefensible for a host of reasons. *First*, Commissioner Werfel assured Arizona "that the rules concerning income inclusion and exclusion are applied fairly and consistently to every state payment." Ex. 12. *Second*, the IRS has said that it will "not take positions inconsistent with its subregulatory guidance when such guidance is in effect." *See* Dept. of Treasury, *Policy Statement on The Tax Regulatory Process* (Mar. 5, 2019), https://home.treasury.gov/system/files/131/Policy-Statement-on-the-Tax-RegulatoryProcess-3-4-19.pdf. *Third*, the IRS cannot depart from its own guidance in a manner that "retroactively abrogate[s] a ruling in an unclear area." *See Est. of McLendon v. Comm'r*, 135 F.3d 1017, 1024 (5th Cir. 1998) (finding reliance on revenue ruling appropriate). And *fourth,* in any event, the IRS has never identified any historical guidelines that would support its determination, even if the Tax Rebate is "evaluated on [its] own."

The IRS has *no* response to any of this. And contrary to its further assertion (at 13), departing from recent determinations without explaining the inconsistency is the epitome of an arbitrary and capricious agency action. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016) (an agency must display awareness of changing position and recognize reliance interests; unexplained inconsistency in a changed agency policy is arbitrary and capricious).

The IRS's disaster relief responses are similarly evasive. Neither Section 139 nor IRS guidance limits the disaster relief exclusion to instances where the enacting legislation cites the disaster. And case law instructs that the phrase "in connection with a qualified disaster," the eligibility criteria used in 26 U.S.C. § 139(b)(4), requires only a broad logical or causal connection. *See* Mot. at 15. The IRS does not dispute this; and

factually, the IRS does not dispute that the record inflation was largely caused by the pandemic.

The IRS, moreover, was apparently cognizant of the applicable standard when it issued IR-2023-23. *See* Ex. 1 (explaining approval of programs "*related*, directly or *indirectly*, *to the various consequences* of the [COVID-19] pandemic"). But the IRS also cannot keep its story straight about whether a state's characterization of a payment matters for federal tax purposes. It asserts (e.g., at 4) that "consistent with the guidance expressed in Notice 2023-56, any label given to a payment made under state law is not controlling for federal tax purposes." But then the IRS faults Arizona (at 3, 16) for, among other things, not referencing (i) "the COVID-19 pandemic or a federally declared disaster"; (ii) "the IRS's statement on the 2022 payments"; (iii) whether "Arizona modeled its program after any of the 21 states that received … desired tax treatment"; or (iv) "that Arizona expect[ed] the[] [Rebate] to be excluded from federal income tax based on the general welfare or disaster relief exclusions."

Ultimately, if *reality* matters, the Tax Rebate was enacted during a period of record inflation to help taxpayers with dependents. And if *labels* matter, the Legislature explicitly stated that its intent was to enact a "general welfare rebate" that would "mitigate the harmful impacts of inflation." Ex. 8 at §§ 3(A), (L)(2). In either event, Arizona's Tax Rebate should have been nontaxable. Yet under the IRS's post hoc rationalizations, the relevant standards and the right magic words just happen to be whatever provides a fig leaf for its discriminatory treatment of Arizona. This is the epitome of unlawful, arbitrary, and capricious decision making.

**B.     Arizona will suffer irreparable harm.**

The IRS has no response to the principle that "the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (cleaned up); *Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134 (2011) (same).

Arizona alleges both Sixteenth Amendment and equal sovereignty claims. The IRS has nothing to say about the former, the merit of which is no longer disputable. *See supra* Section II(A)(1). Regarding equal sovereignty, the IRS asserts (at 20) that "[i]t is hard to imagine a more reasoned basis than … the pandemic circumstances that existed in 2022 [and] had abated by 2023." But the IRS did *not* cite the pandemic as its justification for all the IR-2023-23 determinations. Rather, it stated that pandemic-related payments were an "example" of those excludable from taxation. Ex. 1. And now the IRS is silent on why Colorado, for example, received an exclusion for a refund with no income cap and no qualifying criteria (Ex. 2), while Arizona's more restrictive Rebate (with a dependent requirement) is taxed. Indeed, the IRS does not bother defending the comparative factual bases of any of its determinations.

The IRS again asserts (at 19) that Arizona's damages are "speculative" and suggests that these damages are somehow based on taxpayers' spending *last* year. That is all wrong, as set forth before. *See supra* Section I(A); *Mnuchin*, 408 F.Supp.3d at 408 ("economic logic" of the damages is clear). And the IRS's O'Donnell Declaration only confirms that delay will harm Arizona and its taxpayers. O'Donnell Decl. (Doc. 24-3) ¶ 11 (before the April 15 tax deadline, taxpayers who have already filed may file a "superseding" return; later, they would need to file an amended return); *see also* Jacobs Decl. ¶ 8. Nor does the IRS suggest that, if its conduct is allowed to proceed, Arizona could later sue it for damages to recover the lost tax revenue. The economic harm is not reparable.

The IRS devotes a full page (at 18-19) to Arizona's provision of Form 1099s. Contrary to the IRS's assertion, this is not a "past" harm—it is ongoing. Ex. 13 (Form 1099-MISC accessible "on and after January 31, 2024") (bold omitted). Beyond any monetary injury, the broader significance here is that the IRS is relying on Arizona to tell taxpayers that they must comply with the unlawful determination (*id.*)—a dynamic not present in *Yellen*. The IRS argues that Arizona would have needed to issue Form 1099-Gs in any event, but that is not necessarily true. Internal Revenue Code § 6050E provides

12

for state tax refunds to be reported to account for the possibility that a taxpayer may have federally deducted state taxes and thereby received a federal benefit from them (rendering the refund taxable). But this would be a nonissue if Arizona had properly received the benefit of the general welfare or disaster relief exclusions. *See id.*

### C. The IRS's equities and public interest arguments are unavailing.

Contrary to the IRS's misapprehension (at 20), Arizona has never suggested "that the IRS only started applying the general welfare and disaster relief exclusions in 2023" or "that going forward all state payment programs should receive the same treatment." *See* Mot. at 11 (discussing "100 years" of the general welfare exclusion). Rather, Arizona's modest expectation is that when the "IRS issues guidance on state tax payments to help taxpayers" (Ex. 1), this guidance will—three months later—serve as "direction," https://www.dictionary.com/browse/guidance, rather than as a trap for unsuspecting policymakers and taxpayers. *E.g.*, *Est. of McLendon*, 135 F.3d at 1024 (IRS may not depart from its own guidance in a manner that "retroactively abrogate[s] a ruling in an unclear area").

As for the notion (at 20) that an injunction would harm tax administration or "impose a tremendous burden on the IRS"—*oh please*. The IRS deals with tax issues of tremendous complexity in the ordinary course. If it is true that "[i]t would be extraordinarily difficult for the IRS to identify" the taxpayers it has wrongfully taxed, then the burden may fall on the taxpayers to file superseding or amended returns, O'Donnell Decl. ¶ 11—which, again, confirms the urgency here. *See* Jacobs Decl. ¶ 8.

The IRS has now floated the prospect (at 7-8) that it might not enforce its "advice," but inviting citizens to violate an indefensible determination is pernicious. Instead, the determination should be enjoined.

### CONCLUSION

For the foregoing reasons, the Court should grant the motion.

13

RESPECTFULLY SUBMITTED this 20th day of March, 2024.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

By: */s/ Clinten N. Garrett*

    Joshua D. Bendor (Bar No. 031908)
    Alexander W. Samuels (Bar No. 028926)
    Clinten N. Garrett (Bar No. 022457)
    Kathryn E. Boughton (Bar No. 036105)
    Office of the Arizona Attorney General
    2005 N. Central Ave.
    Phoenix, Arizona 85004
    Telephone: (602) 542-3333
    Joshua.Bendor@azag.gov
    Alexander.Samuels@azag.gov
    Clinten.Garrett@azag.gov
    Kathryn.Boughton@azag.gov
    ACL@azag.gov

    *Attorneys for Plaintiff State of Arizona*