**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, et al., | No. CV-24-00355-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| United States Internal Revenue Service, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. 18). For the reasons detailed below, the Court declines to issue such an injunction.

## BACKGROUND

Arizona seeks to enjoin the United States Internal Revenue Service ("IRS") from imposing and collecting federal income tax on an Arizona Tax Rebate that was granted last year.

On March 13, 2020, the President declared a national emergency pursuant to the National Emergencies Act based on the outbreak of COVID-19. (Doc. 24 at 7). In 2022, 21 states made special payments to their citizens in part to provide relief during the pandemic. (Doc. 18-1 at 6). In early 2023, recipients of these payments were confused as to whether the payments were includable in taxable income for their 2022 federal tax returns. (*Id.* at 6–9). Acknowledging this confusion, the IRS issued guidance ("IR-2023-23") on how it would treat those 2022 payments for the purpose of federal

income tax.  (*Id.*)

> The IRS has determined that in the interest of sound tax administration and other factors, taxpayers in many states will not need to report these payments on their 2022 tax returns . . . [T]he IRS has determined . . . given the fact that the pandemic emergency declaration is ending in May, 2023 making this an issue only for the 2022 tax year, if a taxpayer does not include the amount of one of these payments in its 2022 income for federal income tax purposes, the IRS will not challenge the treatment of the 2022 payment as excludable for income on an original or amended return.

(*Id.* at 6–7).  On August 30, 2023, the IRS issued more guidance to further clarify what types of special payments from states are includable in federal taxable income.  (Doc. 18-1 at 63–64).  That guidance ("IR-2023-158") went beyond the earlier IR-2023-23 guidance, which was solely focused on special payments made in 2022, to explain what types of payments are typically exempt from federal income tax:

> **Most taxpayers receiving state tax refunds do not have to include the state tax refund in income for federal tax purposes.**  As a general rule, taxpayers who choose the standard deduction on their federal income tax returns do not owe federal income tax on state tax refunds.
> . . .

(*Id.*).  But, as the guidance went on to specify for those who itemize:

> Payments made by states under legislatively provided social benefit programs for the promotion of the general welfare are not included as income on an individual recipient's federal income tax return.  To qualify for the general welfare exclusion, state payments must be paid from a governmental fund, be for the promotion of general welfare (that is, based on the need of the individual or family receiving such payments), and not represent compensation for services.  Determining whether payments qualify for this exclusion is a complex, fact-intensive inquiry that depends on a number of considerations.

(*Id.*) (emphasis in original).

In February 2023, the Secretary of Health & Human Services provided a 90-day notice to Governors that the COVID-19 national emergency would expire on May 11, 2023.  (*Id.* at 59).  On May 11, 2023, the day that COVID-19 lost national emergency designation, Governor Hobbs signed Senate Bill 1734 ("Arizona Tax Rebate") into law. (Doc. 18 at 10).  That bill authorized onetime payments to Arizona taxpayers who claimed a dependent tax credit and had a tax liability of at least $1 in the 2021, 2020, or 2019 taxable year.  (*Id.* at 52–53).  The onetime payments were $250 per dependent under the age of 17 ($100 for dependents over 17) claimed in the 2021 tax year.  (*Id.* at 53).  Qualifying taxpayers were entitled to credits for up to three dependents.  (*Id.*).  The bill did not authorize any payments for families that did not owe tax in the relevant years, nor did it cap total payments to actual Arizona income tax liability for the relevant years.  (*Id.* at 52-57).  The payments could be issued no earlier than October 15, 2023.  (*Id.* at 54).  The payments were explicitly excluded from recipients' Arizona gross income: "In computing Arizona adjusted gross income, any rebate received by a taxpayer pursuant to this section and required to be included in Arizona gross income under the internal revenue code shall be subtracted from the taxpayer's Arizona gross income."  (*Id.*).  The bill also included legislative findings:

> L. The legislature finds that:
> 1. Inflation is at a forty-year high, putting gas, groceries and other necessities out of reach for many Arizonans.
> 2. Responsible budgeting has allowed this state to take action to mitigate the harmful impacts of inflation by returning a portion of the surplus to this state's taxpayers with dependents.

(*Id.* at 55).

In August 2023, the IRS issued Notice 2023-56 to describe the rules it applies when determining the tax treatment of state refunds or payments.  (Doc. 18 at 11; Doc. 18-1 at 66–81).  On August 30, 2023, the IRS hosted a call for states to "share and discuss the substance of [IR] 2023-56."  (Doc. 24 at 8; Doc. 24-1 at 2).  A representative from the Arizona Department of Revenue ("ADOR") was on that call.  (Doc. 24 at 8).  On October

3, 2023, the ADOR asked the IRS for guidance on whether the payments would be includable in federal taxable income.  (Doc. 24-1 at 5–7).  In his email to the IRS, the tax policy executive for ADOR stated that "[w]hether Arizona's rebate is subject to federal income tax is ultimately a federal determination."  (*Id.* at 6).  He also explained that:

> Arizona's rebate was enacted after the federal government lifted the Covid emergency and based on what I read it seemed at that point that Arizona's 2023 rebate would likely be taxable. I later read the [IR-2023-158] and thought it was possible that Arizona's rebate could fall under the general welfare provisions.

(*Id.* at 5).  In a follow up email sent on November 16, 2023, the Arizona tax policy executive wrote "[w]e don't need official legal guidance or anything like that, just sort of a head's up (taxable or not taxable) . . . [t]he issue is we are currently having to proceed as if the rebate is taxable for federal purposes."  (Doc. 24-1 at 4).  The ADOR further indicated it was already preparing 1099s for payment recipients.  (*Id.*).  In a meeting on December 7, 2023, the IRS informed the ADOR that the payments were not exempt from treatment as income.  (Doc. 24 at 8).  The ADOR made 1099s available to all recipients by January 31, 2024.  (*Id.* at 9).

On February 21, 2024, Arizona filed this suit against the IRS alleging violation of equal sovereignty, unlawful taxation of non-income, unlawful denial of general welfare or disaster relief exclusions, violation of the APA, and violation of Congress's taxing power. (Doc. 1 at 15–19).  On February 28, 2024, Arizona moved for a Preliminary Injunction, asking this Court to enjoin the IRS from imposing and collecting federal income tax from the Arizona Tax Rebate.  (Doc. 18-3 at 1).

The State acknowledges that it does not and cannot assert the interest of its taxpayers in seeking to avoid the tax.  "The State . . . is not seeking—and cannot seek—direct monetary relief on behalf of its taxpayers."  (Doc. 18 at 25).  Yet, it alleges that, as a political entity, it has suffered damage separate from that suffered by its taxpayers from the IRS's determination to tax the rebate.  First, the State alleges the asserted loss of $480,000

in transaction privilege taxes that the State will not receive because the amount of the federal tax liability on their state rebates will not be available for taxpayers to spend in Arizona.  (*Id.* at 25).  Second, it alleges damage due to its obligation to issue 1099s to rebate recipients.  (*Id.* at 24–25).  Third, it alleges sovereign injuries because the IRS treated Arizona's 2023 tax rebate differently than it treated the 2022 rebate of 21 other states.  (*Id.*).

**DISCUSSION**

**I.    Jurisdiction**

Implicit, of course, in this Court's authority to grant an injunction is the requirement that the Court have jurisdiction to hear the State's claims.  Yet Ninth Circuit precedent casts considerable doubt on this prerequisite.

**a.    Anti-Injunction Act**

The Anti-Injunction Act ("AIA") states "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a).  "The manifest purpose of [the AIA] is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7 (1962).

In *Confederated Tribes and Bands of Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau*, 843 F.3d 810 (9th Cir. 2016), the Tribe, a tribal corporation, and a tribal member sought to enjoin the imposition of excise taxes on tobacco products manufactured by the tribal corporation.  *Id.* at 811.  Based on the Anti-Injunction act, the district court dismissed the tribal citizen and the tribal corporation but found that it had jurisdiction over the Tribe's claim despite the Act.  *Id.* at 812, 815.  On appeal, despite the district court's denial of the Tribe's claims on the merits, the *Yakama Nation* Court found that the AIA completely deprived the district court of jurisdiction over the Tribe's claims. It disclaimed the district court's reliance on *South Carolina v. Regan,* 465 U.S. 367 (1984), noting that in *Regan* the state did have an interest that was not derivative of the interests of

its taxpayers in that "the state's interest in issuing bonds in the form it chose existed separately from the bondholders' interest in avoiding taxation." *Id.* at 815 (citing *Regan,* 465 U.S. at 380–81). But it noted that the *Regan* exception to the AIA "is a narrow one" to be narrowly applied. 843 F.3d at 815 (citing *Am. Bicycle Ass'n v. United States*, 895 F.2d 1277, 1281 (9th Cir. 1990)). Under the facts of *Yakama Nation,* the court noted, the Tribe's injury "flows from the taxation of its members, and thus is wholly derivative" of the injuries to the Tribal citizen and corporation. *Id.*[1] Because the injury was derivative, the Tribe could reasonably expect its interests to be adequately represented and protected in a suit or a refund claim brought by an individual citizen or the tribal corporation. *Id.* *Yakama Nation* is difficult to fairly distinguish from the facts here.

Of course, as the State points out, the Second Circuit in *New York v. Yellen*, 15 F.4th 569 (2nd Cir. 2021), does attempt to distinguish *Yakama Nation*. It does so by asserting the injuries are not wholly derivative because of "the absence of taxpayers in this litigation, in contrast to the important role of the manufacturer and the individual tribal member in the proceedings in *Yakama Nation* to undo the tax that was most directly imposed on them." *Id.* at 579. Nevertheless, *Yellen* does nothing to explain how the presence or absence of other Plaintiffs in a suit bears any relation to whether the state's claims are derivative of those of its taxpayers. Further, the posture of *Yakama Nation*, undermines *Yellen*'s attempt to distinguish it. While the tribal member and manufacturer in *Yakama Nation* had been parties to the suit, they were no longer so by the time the matter reached the *Yakama Nation* Court. In other words, the AIA barred the Tribe's suit not because other Plaintiffs were involved, but because other Plaintiffs could bring a suit to obtain the same relief for themselves and, by extension, the Tribe.

That is the posture before this Court. Plaintiff's alleged loss of transaction privilege taxes flows directly from the tax treatment of its taxpayers and is wholly derivative of its

---

[1] In this respect the *Yakama* Court also noted that there was no distinction between a Tribe as Plaintiff and a State as Plaintiff. "All of these various textual and contextual clues in the Internal Revenue Code and the Anti-Injunction Act specifically overcome any presumption that 'person' does not include the sovereign" *Id.* at 814.

taxpayers' injuries. *Yellen* improperly analyzes what claims are "wholly derivative" of injuries to taxpayers and, in so doing, inaccurately distinguishes Ninth Circuit precedent. This Court is bound by *Yakama Nation,* not *Yellen*.[2]

The Court, therefore, believes it unlikely that it has jurisdiction to hear this particular claim wholly apart from whether the state has met its burden to receive a preliminary injunction based on it.

### 1. It Is not Apparent that the State's Issuance of 1099's Constitutes Injury or, if so, Would Be Ameliorated by Injunctive Relief.

To the extent that the state asserts it is damaged by having to issue 1099's on its state tax rebates, the state has not met its burden of establishing either that this constitutes damage or, if it does, that it is the appropriate subject of injunctive relief. It appears the United States tax code required Arizona to issue 1099s regardless of the IRS's tax treatment of the payments. *See* 26 U.S.C. § 6050E(a). Emails between the ADOR and IRS indicate as much. (Doc. 24-1 at 4; Doc. 24-2 at 3). It does not then appear that the issuance of 1099's constitutes injury to Arizona. In any event, Arizona has apparently already prepared and made available 1099s to relevant taxpayers. (Doc. 18 at 13). As such, there is no action regarding the 1099s to enjoin. *BrakeMark USA LLC v. Pastis*, No. CV-23-02674-PHX-SMB, 2024 WL 810635, at *4 (D. Ariz. Feb. 27, 2024) ("The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance.") (quoting *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018)).

### 2. This Court Likely Has No Jurisdiction Over Arizona's Sovereignty Claim to the Extent That Claim Also "Flows from the Taxation of its Taxpayers."

As a basis for obtaining preliminary injunctive relief, the State did not flesh out with

---

[2] In an attempt to assert standing Arizona points to the commerce clause challenge raised by Wyoming against Oklahoma state law in *Wyoming v. Oklahoma*, 502 U.S. 437, 448 (1992). In contrast, the IRS compares Arizona's position to *Pennsylvania v. New Jersey*, 426 U.S. 660, 665 (1976) another case in which states sued states. In such cases, of course, the Anti-Injunction Act would have had no application.

great clarity how the taxation of the state rebate infringes Arizona's sovereignty.  In its briefing the State describes such damage as "the IRS's disparate treatment of Arizona without reasoned basis" or that the state's "inability to enforce its duly enacted plans" because "each individual Arizona taxpayer files a federal tax return sending money to the IRS that the State had intended to remain in Arizona."  (Doc. 18 at 25).

Of course, as explained above, any asserted damage of Arizona's sovereignty that "flows from the taxation of its [taxpayers]" is not a claim over which this Court likely has jurisdiction.  Arizona may be asserting some sort of sovereignty claim that is not so derived. But, if so, the contours of such a claim, as it now stands, are insufficiently defined for this Court to determine either that the State is likely to prevail, or to fashion preliminary injunctive relief that is tailored to the damage asserted.  In light of the United States' own considerable and independent right to tax Arizonans who are also United States citizens, *U.S. v. Burke*, 504 U.S. 229, 233 (1992) (quoting *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955)); 26 U.S.C. § 61 ("Except as otherwise provided in this subtitle, gross income means all income from whatever source derived . . . ."). the Court declines, at least at this stage of the litigation, to enter an order declaring that the state tax rebate is not subject to any federal taxation.

Accordingly,

**IT IS THEREFORE ORDERED** Plaintiff's Motion for Preliminary Injunction (Doc. 18) is **DENIED**.

Dated this 5th day of April, 2024.

G. Murray Snow
Chief United States District Judge