**KRISTIN K. MAYES**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Joshua D. Bendor (Bar No. 031908)
Alexander W. Samuels (Bar No. 028926)
Clinten N. Garrett (Bar No. 022457)
Kathryn E. Boughton (Bar No. 036105)
Office of the Arizona Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
(602) 542-3333
Joshua.Bendor@azag.gov
Alexander.Samuels@azag.gov
Clinten.Garrett@azag.gov
Kathryn.Boughton@azag.gov
ACL@azag.gov

*Attorneys for Plaintiff State of Arizona*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, | No. CV-24-00355-PHX-GMS |
| Plaintiff, | |
| v. | **OPPOSITION TO MOTION TO DISMISS** |
| United States Internal Revenue Service; Daniel I. Werfel, in his official capacity as Commissioner of the United States Internal Revenue Service; the United States Department of Treasury; Janet L. Yellen, in her official capacity as Secretary of the United States Department of Treasury; and the United States of America, | (Hon. G. Murray Snow) Oral Argument Requested |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................iii

INTRODUCTION ............................................................................................... 1

BACKGROUND .................................................................................................. 1

    A.   The IRS determines that twenty-one state tax refunds are nontaxable. ........... 1

        1.   Tax refunds are excludable from federal taxation under the general welfare and disaster relief exclusions.......................................................................... 2

        2.   A tax refund is generally nontaxable............................................................ 2

    B.   Arizona enacts a one-time Tax Rebate in reliance on IR-2023-23. .................. 3

    C.   The IRS affirms its February 2023 guidance. .................................................. 3

    D.   The IRS unlawfully declares that the Tax Rebate is taxable in full, harming Arizona and its taxpayers. ............................................................................... 4

    E.   The IRS provides conflicting and evolving rationales for its discriminatory treatment of Arizona. ..................................................................................... 5

    F.   Arizona sues to enjoin the IRS's unlawful determination. ............................... 5

ARGUMENT ...................................................................................................... 5

I.    Arizona's claims are justiciable. ................................................................... 5

    A.   Arizona has standing to bring its claims. ....................................................... 6

        1.   *Wyoming v. Oklahoma.* ................................................................................. 7

        2.   *Maryland v. Louisiana.* ................................................................................. 8

        3.   *Florida v. Mellon.* ........................................................................................ 8

        4.   *New York v. Yellen.*...................................................................................... 9

            (a)   Arizona's tax revenue loss is more direct. ............................................. 9

            (b)   Arizona's sovereign injury is greater. .................................................... 9

    B.   Exceptions to the Anti-Injunction Act ("AIA") and Declaratory Judgment Act ("DJA") allow Arizona's suit. ....................................................................... 10

        1.   The *South Carolina v. Regan* exception to the AIA applies. ...................... 11

            (a)   Claim by a state. ................................................................................... 11

            (b)   Claim arises from a federal tax on state residents' income.................. 11

            (c)   Claim implicates sovereign state policy............................................... 12

         2.   *Yakama Nation* is distinguishable and must be read with *Regan*................ 12

            (a)   *Regan's* text ........................................................................................ 12

(b)     Claims not derivative ............................................................ 13

(c)     *Yakama Nation* is the factual and legal outlier.................... 13

3.     The IRS's additional authority is unavailing................................. 14

4.     The *Enochs v. Williams Packing* exception also applies. ........................... 14

5.     An exception under the AIA also applies to the DJA. ............... 15

C.     The IRS's sovereign immunity arguments are unavailing. ............................. 15

II.     Arizona has stated claims under each Count of its complaint. ........................... 17

A.     The IRS illegally taxed nonincome. ................................................... 17

B.     The IRS illegally denied applicable exclusions. ............................. 18

1.     General welfare exclusion. ........................................................ 19

2.     Disaster relief exclusion. ...................................................... 20

C.     Arizona has stated statutory and constitutional claims based on the IRS's illegal determinations. ................................................... 21

1.     Denying applicable exclusions violates the Tax Code (Count 1). .............. 21

2.     Taxing nonincome is unconstitutional and violates the Tax Code (Counts 2, 3). ................................................... 21

3.     Both determinations violate the APA (Count 4). ........................ 22

4.     Both determinations violate equal sovereignty (Count 5)......................... 22

CONCLUSION ................................................................................ 23

1

2

# TABLE OF AUTHORITIES

3

**Cases**                                                                      **Page(s)**

*Bennett v. Spear*,
520 U.S. 154 (1997) ................................................................................. 16

*Bob Jones Univ. v. Simon*,
416 U.S. 725 (1974) ................................................................................. 14

*Burns v. McGill*,
1999 WL 1090818 (M.D. Tenn. Oct. 13, 1999) .......................................... 15

*Comm'r v. Glenshaw Glass Co.*,
348 U.S. 426 (1955) ................................................................................. 21

*Confederated Tribes & Bands of Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau*,
843 F.3d 810 (9th Cir. 2016) ............................................................... 11, 13

*E. V. v. Robinson*,
906 F.3d 1082 (9th Cir. 2018) .................................................................. 16

*Eisner v. Macomber*,
252 U.S. 189 (1920) ................................................................................. 21

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016) ................................................................................. 22

*Enochs v. Williams Packing & Nav. Co.*,
370 U.S. 1 (1962) .................................................................................... 14

*Est. of McLendon v. Comm'r*,
135 F.3d 1017 (5th Cir. 1998) .................................................................. 21

*F.C.C. v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ................................................................................. 22

*Florida v. Mellon*,
273 U.S. 12 (1927) ................................................................................. 8, 9

*Ginsburg v. United States*,
922 F.3d 1320 (Fed. Cir. 2019) ................................................................ 18

*Hirsch v. Comm'r*,
115 F.2d 656 (7th Cir. 1940) .................................................................... 22

iii

*Idaho Rivers United v. U.S. Forest Serv.*,
  857 F. Supp. 2d 1020 (D. Idaho 2012) ........................................................ 17

*Ipsen Biopharmaceuticals, Inc. v. Azar*,
  943 F.3d 953 (D.C. Cir. 2019) .................................................................... 17

*Kentucky v. Biden*,
  23 F.4th 585 (6th Cir. 2022) ...................................................................... 10

*King Mountain Tobacco Co., Inc. v. Alcohol & Tobacco Tax & Trade Bureau*,
  2012 WL 12951864 (E.D. Wash. Sept. 24, 2012) ...................................... 16

*Lies v. Farrell Lines, Inc.*,
  641 F.2d 765 (9th Cir. 1981) ........................................................................ 7

*Maines v. Comm'r*,
  144 T.C. 123 (2015) ................................................................................ 4, 18

*Maryland v. Louisiana*,
  451 U.S. 725 (1981) ...................................................................................... 8

*Massachusetts v. E.P.A.*,
  549 U.S. 497 (2007) ............................................................................... 10, 11

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ...................................................................................... 22

*Navajo Nation v. Dep't of the Interior*,
  876 F.3d 1144 (9th Cir. 2017) .................................................................... 15

*New York v. Mnuchin*,
  408 F.Supp.3d 399 (S.D.N.Y. 2019) ................................................... 6, 7, 13

*New York v. Yellen*,
  15 F.4th 569 (2d Cir. 2021) ................................................................ 6, 7, 9, 23

*Nw. Austin Mun. Util. Dist. No. One v. Holder*,
  557 U.S. 193 (2009) .................................................................................... 23

*Ogdon v. Grand Canyon Univ. Inc.*,
  2024 WL 1344455 (D. Ariz. Mar. 29, 2024) .............................................. 20

*Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*,
  465 F.3d 977 (9th Cir. 2006) ...................................................................... 16

*Pride v. Correa*,
  719 F.3d 1130 (9th Cir. 2013) ...................................................................... 6

*S. Utah Wilderness All. v. Off. of Surface Mining Reclamation,*
  & Enf't, 620 F.3d 1227 (10th Cir. 2010)...................................................17

*Safe Air for Everyone v. Meyer,*
  373 F.3d 1035 (9th Cir. 2004) .....................................................................6

*Shelby Cnty., Ala. v. Holder,*
  570 U.S. 529 (2013) ...............................................................................22, 23

*South Carolina v. Baker,*
  485 U.S. 505 (1988) ....................................................................................14

*South Carolina v. Regan,*
  465 U.S. 367 (1984) ..............................................................................passim

*Tempel v. Comm'r,*
  136 T.C. 341 (2011) ....................................................................................17

*Texas v. Yellen,*
  2022 WL 989733 (N.D. Tex. Mar. 4, 2022) ..............................................23

*Thompson v. Davis,*
  295 F.3d 890 (9th Cir. 2002) ......................................................................17

*Whistleblower 972-17W v. Comm'r,*
  2022 WL 2718766 (T.C. July 13, 2022) .....................................................20

*Williams v. Bernhardt,*
  2021 WL 2555435 (D. Ariz. June 22, 2021)...............................................15

*Wyoming v. Oklahoma,*
  502 U.S. 437 (1992) ...............................................................................6, 7, 8

*Yamaha Motor Corp., U.S.A. v. United States,*
  779 F.Supp. 610 (D.D.C. 1991) .................................................................15

**Statutes and Constitutional Provisions**

5 U.S.C. § 706 ..................................................................................................22

16 U.S.C. § 6050 ..............................................................................................10

26 U.S.C. § 61 ..................................................................................................21

26 U.S.C. § 139 ..........................................................................................20, 21

U.S. Const. amend. XVI .................................................................................21

U.S. Const. art. I, § 8 ................................................................................................21

**Other Authorities**

Dept. of Treasury, Policy Statement on The Tax Regulatory Process (Mar. 5, 2019),
    https://home.treasury.gov/system/files/131/Policy-Statement-on-the-Tax-Regulat
    oryProcess-3-4-19.pdf ..........................................................................................21

*IRS, Suits Against the Unit*ed States, https://www.irs.gov/irm/part5/irm_05-017-005 ... 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Arizona alleges that the IRS (1) unlawfully determined that the State's Tax Rebate is a taxable accession to wealth; and (2) denied applicable income exclusions based on discriminatory and unlawful pretexts. The Court has already observed that "maybe on the merits [the State] prevail[s]" on the first claim. 4/2/24 Tr. at 17:7-13. And the Court has characterized the IRS's explanations regarding exclusions as "troublesome." *Id.* at 38:9-20. But because the Court had jurisdictional concerns under the Anti-Injunction Act, it "decline[d], at least at [the preliminary injunction] stage of the litigation, to enter an order declaring that [the Tax Rebate] is not subject to any federal taxation." Dkt. 29 at 8.

In moving to dismiss under Rules 12(b)(1) and 12(b)(6), the IRS now seeks to preclude Arizona from progressing beyond the pleadings stage. To the State's knowledge, no court has ever dismissed a state's lawsuit on standing or Anti-Injunction grounds under similar circumstances—certainly the IRS has cited no such case—and this Court should not be the first. The U.S. Supreme Court case that established the pertinent exception to the Anti-Injunction Act is directly on point and controlling here. The Ninth Circuit case that the Court highlighted in its preliminary injunction order is factually and legally distinguishable, and does not support dismissal. At a minimum, the case must proceed to fact discovery where Arizona can defend its estimated loss of transaction privilege tax revenue and develop the record regarding the IRS's discriminatory interference with the State's tax policy.

Because the IRS's additional jurisdictional and merits arguments also lack merit, this Court should deny the motion to dismiss.

## BACKGROUND

### A.    The IRS determines that twenty-one state tax refunds are nontaxable.

In February 2023, the IRS issued a statement to provide "guidance on state tax payments to help taxpayers." Dkt. 18-1, Ex. 1 (IR-2023-23)[1]; Dkt. 1, Compl. ¶ 18. The

---

[1] All references to exhibits are to materials at Dkt. 18-1.

1   IRS determined that all twenty-one payment and refund programs it analyzed were
2   nontaxable (a) based on the general welfare or disaster relief exclusion; or (b) because
3   returns of taxes paid are nontaxable when taxpayers take the standard deduction or
4   otherwise do not deduct state taxes on their federal returns. Ex. 1; Compl. ¶¶ 19, 24–25.

### 1.   Tax refunds are excludable from federal taxation under the general welfare and disaster relief exclusions.

7   The IRS determined that taxpayers in seventeen states did not need to report state
8   refunds and payments as income. *Id.* The IRS failed to identify the precise bases for these
9   determinations, but stated that "[i]f a payment is made for the promotion of the general
10  welfare or as a disaster relief payment, *for example* related to the outgoing pandemic,
11  it may be excludable from income for federal tax purposes under the General Welfare
12  Doctrine or as a Qualified Disaster Relief Payment." Ex. 1; Compl. ¶ 20 (emphasis
13  added). The IRS further represented that "[d]etermining whether payments qualify for
14  these exceptions is a complex fact intensive inquiry that depends on a number of
15  considerations." Ex. 1; Compl. ¶ 21.

16  The rebate programs in several of these states did not contain *any* income
17  qualification whatsoever. Exs. 2-6; Compl. ¶¶ 53-57. Colorado, for example, issued
18  payments to all residents over age eighteen who had filed a state tax return in 2021. Ex. 2.
19  California made refunds generally available to all residents with incomes up to $500,000.
20  Ex. 7.

### 2.   A tax refund is generally nontaxable.

22  The IRS also stated that irrespective of any applicable exclusion, a tax refund is
23  nontaxable if it is a refund of state taxes paid and the recipient either claimed the standard
24  deduction or itemized deductions but did not receive a tax benefit. Ex. 1; Compl. ¶ 24.
25  And on this basis, the IRS determined that payments by four additional states were
26  generally nontaxable. Ex. 1; Compl. ¶ 25.

27
28

**B.  Arizona enacts a one-time Tax Rebate in reliance on IR-2023-23.**

A few months later, in reliance on the IRS's February 2023 determinations, Arizona enacted the Arizona Tax Rebate. Ex. 8 (S.B. 1734); Compl. ¶ 28. The Tax Rebate was "a onetime individual income tax general welfare rebate" available to taxpayers who had paid at least $1 in Arizona taxes in 2019, 2020, or 2021, claimed at least one dependent in 2021, and claimed a Dependent Tax Credit. Ex. 8 at 2-3; Compl. ¶¶ 29, 34. Taxpayers were eligible to receive $250 for each dependent under age seventeen and $100 for dependents age seventeen or older, capped at $750 per taxpayer. Ex. 8 at 3; Compl. ¶ 30. The Tax Rebate was paid from the general fund and it was not compensation for services. Compl. ¶ 31.

The federal COVID-19 emergency declaration was still in effect on May 11 when Governor Hobbs signed the Tax Rebate into law, Ex. 9, while pandemic-related inflation was surging. Arizona's Legislature specifically found that "[i]nflation is at a forty-year high, putting gas, groceries and other necessities out of reach for many Arizonans." The State therefore enacted the Tax Rebate "to mitigate the harmful impacts of inflation." Ex. 8 at 5; Compl. ¶ 33.

Approximately 75% of Arizonans who received a Tax Rebate payment had tax liability in excess of the Rebate amount. Dkt. 18-2, Decl. of Karen Jacobs ("Jacobs Decl.") ¶ 4 (average tax liability of about $1,700, against an average Rebate amount of $370); Compl. ¶ 72. Because the vast majority of taxpayers take the standard federal deduction, Ex. 10 (IR-2023-158), the Tax Rebate appeared to be nontaxable for most Arizonans, irrespective of any exclusion.

**C.  The IRS affirms its February 2023 guidance.**

In August 2023, the IRS issued Notice 2023-56 to "describe[] the rules that the [IRS] applies in determining the federal income tax consequences of refunds of State or local taxes and certain other payments made by State or local governments … to individuals." Ex. 11 at 1; Compl. ¶ 36. The IRS noted that "[i]n 2022, a number of States

implemented programs to provide State payments to certain individuals residing in their States." Ex. 11 at 1; Compl. ¶ 37. The IRS then observed that "*[m]any* of these programs were related, directly *or indirectly*, to the various consequences of the [COVID-19] pandemic, and *the programs varied in terms of the types of payments, payment amounts, and eligibility criteria*." Ex. 11 at 1; Compl. ¶ 38 (emphasis added). The IRS also affirmed that even if exclusions do not apply, state tax refunds "generally are not includible in the recipient's Federal gross income because, as the return of an overpayment of the recipient's State tax liability, these refunds are not an accession to wealth." Ex. 11. at 4; Compl. ¶¶ 45-46, 48; *see also* Ex. 10 at 1. As authority for this rule, the IRS cited *Maines v. Comm'r*, 144 T.C. 123 (2015). Ex. 11 at 3-4; Compl. ¶ 47.

The IRS purported to state that its February 2023 guidance applied only for payments made in 2022. Ex. 11 at 2. But the IRS did not identify a single program that it had found nontaxable for 2022 but would have found taxable in other years based on the criteria that it enunciated. *Id.* Nor did the IRS provide any specific criteria to facilitate such an analysis by taxpayers or policymakers. *Id.*

### D.   The IRS unlawfully declares that the Tax Rebate is taxable in full, harming Arizona and its taxpayers.

In December 2023, the IRS orally informed the Arizona Department of Revenue that—notwithstanding its determinations concerning materially similar programs just months earlier—the Arizona Tax Rebate was federally taxable in full. Jacobs Decl. ¶ 5; Compl. ¶¶ 58-59. Notwithstanding the significant public policy consequence of this determination, the IRS provided no written explanation until February 15, 2024, in response to a letter from Attorney General Mayes. Ex. 12; Compl. ¶ 60. In the intervening time, the Department had to convey the IRS's erroneous decision to Arizona taxpayers and make Form 1099s available to them to report the purported "income" from the Tax Rebate. Ex. 13; Jacobs Decl. ¶ 7; Compl. ¶ 61.

**E.     The IRS provides conflicting and evolving rationales for its discriminatory treatment of Arizona.**

The IRS purported to assure Arizona in its February 2024 letter that its "priority [is] to ensure that the rules concerning income inclusion and exclusion are applied fairly and consistently to every state payment," Ex. 12 at 3, even as it affirmed its discriminatory determination. The IRS again reiterated that determining whether payment programs qualify for an exclusion requires "a fact-intensive analysis." But then, for the first time, the IRS also asserted that its determinations in IR-2023-23 "did not reflect a legal determination as to the proper treatment for each of the payments." Ex. 12 at 1; Compl. ¶ 67. Likewise, the IRS had earlier stated that "the particular label given to [a] payment under State law is not controlling for Federal tax purposes," Ex. 11 at 3, and its February 15 letter affirmed this. Ex. 12 at 1; Compl. ¶ 68. But in a call that same day, the IRS disclosed that, in fact, the IRS deferred to a state law's characterization of its payments as being for the purpose of disaster or COVID-19 relief. Compl. ¶ 68.

Regarding the fundamental principle that refunds generally are not taxable income, the IRS asserted that "[t]he 2023 Arizona tax rebates are not refunds of taxes previously paid for federal tax purposes because the amount paid to taxpayers is not *capped* at the amount of tax previously paid." Ex. 12 at 2 (emphasis added); Compl. ¶ 70. The IRS again purported to rely on *Maines* for its position. Ex. 12 at 2-3.

**F.     Arizona sues to enjoin the IRS's unlawful determination.**

On February 21, Arizona filed its complaint for declaratory and injunctive relief to enjoin the IRS's determination. Compl. ¶¶ 90–122 (pleading five statutory and constitutional claims).

ARGUMENT

**I.     Arizona's claims are justiciable.**

As the IRS acknowledges (at 4), "states may sue the federal government … to vindicate their sovereign or quasi-sovereign interests." Arizona alleges sovereign injury

5

arising out of the IRS's discriminatory taxation of Arizona's Tax Rebate, *e.g.*, Compl. ¶¶ 81, 117, and factual allegations must be accepted as true—with all reasonable inferences drawn in the nonmovant's favor—on a Rule 12(b)(1) motion. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). While a movant may go outside the pleadings, *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), the IRS has offered no evidence controverting Arizona's well-pled allegations. Nor has the IRS cited a single case supporting dismissal of this case on standing grounds. And because the Supreme Court's opinion in *South Carolina v. Regan*, 465 U.S. 367 (1984)—not the Ninth Circuit's application of *Regan* on very different facts—controls with respect to the Anti-Injunction Act, dismissal here would be reversible error.

## A.    Arizona has standing to bring its claims.

Arizona alleges that the IRS is unlawfully taking about $20.8 million from State residents, costing the State approximately $480,000 in transaction privilege tax (i.e., sales tax) revenue. Dkt. 18-2, Jacobs Decl. ¶ 6. Contrary to the IRS's bare assertions, this is not "conjectural" or "hypothetical"; rather, it is an estimate of specific lost tax revenue based on a calculation by an experienced Department of Revenue economist. *Id.* ¶ 1.

The alleged loss of "loss of specific tax revenues" establishes a state's standing. *Wyoming v. Oklahoma*, 502 U.S. 437, 448 (1992) (distinguishing cases where party did not allege a specific tax loss); *New York v. Yellen*, 15 F.4th 569, 577 (2d Cir. 2021) (finding standing where "New York provided a specific estimate that the SALT deduction cap will cause [its] real estate transfer tax revenue to decrease"). If the IRS wants to nitpick this (e.g., at 6 ("oversimplistic"; affected by "many factors")), it can do so later— but not at the pleadings stage. *New York v. Mnuchin*, 408 F.Supp.3d 399, 410 (S.D.N.Y. 2019) ("Perhaps a full evidentiary record would reveal that the States' theory of [tax loss] injury is not borne out by reality. But for purposes of withstanding the Government's Rule 12(b)(1) motion, the States have alleged an injury that, if proved," confers standing.). And in any case, the precise amount of Arizona's loss is not relevant to standing—even if the

1    IRS could show in discovery that Arizona's loss was much smaller, Arizona would still

2    have standing, because there is no rule that an injury must be large to confer standing.

3            The IRS cites (at 5) the Court's statement that the "'alleged loss of transaction

4    privilege taxes flows directly from the tax treatment of its taxpayers and is wholly

5    derivative of its taxpayer's injuries'" (Dkt. 29 at 6–7). But the IRS is conflating Anti-

6    Injunction Act issues (discussed below) with standing and causation. When an act injures

7    multiple parties in a chain, that is simply a question of causation—and here, as in *Yellen*,

8    "basic economic logic" supports Arizona's injury. 15 F.4th at 577 (cleaned up); *Mnuchin*,

9    408 F.Supp.3d at 409 ("states, no less than private citizens, are entitled to invoke"

10   expected financial loss to support standing). Further, "[c]ausation is generally a question

11   of fact." *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981).

12           The IRS's authorities uniformly support Arizona's standing here.

13                      **1.    *Wyoming v. Oklahoma.***

14           *Wyoming v. Oklahoma* concerned Oklahoma's passage of an Act requiring

15   Oklahoma coal-fired electric plants to burn a coal mixture with at least 10% Oklahoma-

16   mined coal. 502 U.S. at 440. Wyoming was "a major coal-producing state" and it imposed

17   a severance tax on coal extracted from the state. *Id.* at 442. Before Oklahoma passed its

18   Act, Oklahoma utilities had purchased nearly all of their coal from Wyoming; after

19   passage they purchased somewhat less, costing Wyoming about $500,000 in severance

20   tax revenue per year. *Id.* at 445.

21           In an original action under the Commerce Clause, a Special Master denied

22   Oklahoma's motion to dismiss on standing grounds and later denied its motion for

23   summary judgment. *Id.* at 446. Oklahoma made "much of the fact that the mining

24   companies affected in Wyoming could bring suit raising the Commerce Clause challenge,

25   as private parties aggrieved by state action often do." *Id.* at 451. Rejecting Oklahoma's

26   argument that Wyoming had not suffered cognizable "direct injury," the Supreme Court

27   agreed that "Wyoming clearly had standing to bring [the] action." *Id.* at 447.

28

7

As the Court explained, "[e]ven if such action [by a private party] were proceeding … Wyoming's interests would not be directly represented." *Id.* at 452. Wyoming's allegations constituted "a direct injury in the form of a loss of specific tax revenues." *Id.* at 448. And while "the taxes lost … amounted to less than 1% of revenues received by Wyoming," they were not "*de minimis.*" *Id.* at 453 n.11 ("'[A] half million dollars here and a half million dollars there, and pretty soon real money is involved.'") (quoting Wyoming's paraphrase of Senator Dirkson). After finding standing, the Court granted Wyoming's summary judgment motion and held the Act unconstitutional under the Commerce Clause. *Id.* at 461.

### 2. *Maryland v. Louisiana.*

In *Maryland v. Louisiana*, another original action, Maryland and other states challenged a tax on natural gas imported into Louisiana. 451 U.S. 725, 731 (1981). The plaintiff states did not owe the tax; rather, "the owner of the gas at the time the first taxable 'use' occurs within Louisiana" owed it. *Id.* Rejecting Louisiana's standing arguments, the Court recognized that "[s]tanding to sue … exists for constitutional purposes if the injury alleged fairly can be traced to the challenged action of the defendant, and not [to] injury that results from the independent action of some third party." *Id.* at 736 (cleaned up). Thus, "although the tax is collected from the pipelines, it [was] a burden on" the consumer states that established standing. *Id.* at 737. After finding standing, the Court held the first-use tax unconstitutional. *Id.* at 760.

### 3. *Florida v. Mellon.*

In *Florida v. Mellon*, 273 U.S. 12 (1927), Florida challenged Congress' enactment of the federal inheritance tax and the Supreme Court declined to accept jurisdiction. This is a good example of a case where the plaintiff did *not* allege specific tax revenue loss. *Id.* at 17–18 (alleging that "the act will have the result of inducing potential taxpayers to withdraw property from the state, thereby diminishing the subjects upon which the state power of taxation may operate"). Additionally, (1) the case concerned the exercise of

1   original action jurisdiction, *id.* at 16, not constitutional standing requirements; and (2)

2   Florida was challenging an Act that applied uniformly to all states, *id.* at 17, negating the

3   alleged sovereign injury.

4               **4.    *New York v. Yellen.***

5         In *New York v. Yellen*, the most recent and factually analogous of these cases, the

6   Second Circuit held that New York and other states had standing to sue the IRS for

7   imposing a $10,000 cap on the state and local tax ("SALT") deduction. 15 F.4th at 575–

8   77. The IRS's assertion (at 5) that *Yellen* can be distinguished as involving "a *direct* injury

9   to [the states'] taxing authority separate from the higher taxes their residents would pay"

10  is wrong in multiple respects. To the extent *Yellen* can be distinguished, it is only insofar

11  as the harm to Arizona is more direct and more injurious to Arizona's sovereign interests.

12               **(a)    Arizona's tax revenue loss is more direct.**

13        In *Yellen*, the causal theory supporting standing had at least five steps: (1)

14  Congress imposes the SALT deduction cap, limiting the federal tax deduction available

15  to taxpayers; which (2) "makes homeownership more expensive"; which (3) "reduces

16  demand in the housing market"; which (4) "caus[es] lower prices and fewer sales"; which

17  ultimately (5) "leads to specific losses in tax revenue derived from property and real estate

18  transfer taxes." 15 F.4th at 576. Here, the causal chain is simpler and more direct: (1) the

19  IRS unlawfully taxes the Tax Rebate; which (2) takes money from Arizona taxpayers,

20  some of which they otherwise would have spent on goods and services; which (3) results

21  in a predictable and calculable loss of sales tax. *See* Supp. Decl. of Karen Jacobs ¶¶ 3-6

22  (explaining calculation of lost transaction privilege tax).

23               **(b)    Arizona's sovereign injury is greater.**

24        The IRS also argues (at 5) that the injury in *Yellen* was more direct than the injury

25  here because Congress reduced the SALT deduction. That gets things backwards.

26  Because the states in *Yellen* were challenging a congressional act that facially applied the

27  same to all states, they struggled to articulate a cognizable claim—which is why they lost

28

9

1    on the merits despite having standing. 15 F.4th at 579–84. Here, the IRS administratively

2    determined that twenty-one state payments and refunds were nontaxable in whole or part,

3    then discriminated against Arizona's Tax Rebate, enacted three months later, by denying

4    it the same treatment. The IRS is free to argue that its discriminatory treatment had a

5    reasoned basis, but that is a question of fact that cannot be resolved at the pleadings stage.

6        Additionally, Arizona's claim arises out of a tax imposed *on a State payment*.

7    Therefore, as in *South Carolina v. Regan*, the IRS's decision bears directly on State

8    policy. *See infra* Section I(B). States have a "stake in protecting [their] quasi-sovereign

9    interests," and are therefore "entitled to special solicitude in [federal] standing analysis."

10   *Massachusetts v. E.P.A.*, 549 U.S. 497, 520 (2007). Even if this were a close call (which

11   it should not be), this principle also strongly militates towards standing here. *Id.*; *see also,*

12   *e.g.*, *Kentucky v. Biden*, 23 F.4th 585, 598 (6th Cir. 2022) ("States … have sovereign

13   interests to sue when they believe that the federal government has intruded upon areas

14   traditionally within states' control.").[2]

15       **B.   Exceptions to the Anti-Injunction Act ("AIA") and Declaratory**
16       **Judgment Act ("DJA") allow Arizona's suit.**

17       While the AIA generally precludes suits to enjoin tax collection, 26 U.S.C. §

18   7421(a), it does not bar "actions brought by aggrieved parties for whom [Congress] has

19   not provided an alternative remedy." *Regan*, 465 U.S. at 378. In denying Arizona's

20   motion for preliminary injunction, the Court gave too much weight to a Ninth Circuit case

21

22   _____

     [2] The IRS mischaracterizes (at 6-7) the related injury arising from Arizona's issuance of
23   Forms 1099-MISC. First, it is not a given that Arizona would have needed to issue Forms
     1099-G absent the unlawful determinations. If the IRS had lawfully applied the rule that
24   tax refunds are generally nontaxable—but had not granted an exclusion—Arizona would
     have needed to issue Forms 1099-G so that the subset of taxpayers who had federally
25   deducted their state taxes could report the refunds. 16 U.S.C. § 6050E. But if the IRS had
     granted the same income exclusion that seventeen other states received, the rebates would
26   have been wholly nontaxable for all taxpayers, rendering Forms 1099-G unnecessary. *See*
     *id.* Second, the alleged sovereign injury is not that Arizona had to issue Forms 1099—
27   rather, that it had to do so in support of an *unlawful* determination. By contrast, the states
     in *Yellen* challenging the SALT cap were not subject to any affirmative reporting burden.
28

applying *Regan* on disparate facts and too little weight to *Regan* itself. At a minimum, the undeveloped record precludes dismissal under the AIA (or DJA) at the pleadings stage. *See* Compl. ¶ 89 (alleging no alternative remedy).

### 1.     The *South Carolina v. Regan* exception to the AIA applies.

The Court's preliminary injunction order (Dkt. 29 at 5-7) relied substantially on *Confederated Tribes & Bands of Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau*, 843 F.3d 810 (9th Cir. 2016), which held that the AIA barred an Indian tribe from suing to enjoin a tobacco tax. The Court acknowledged that *Yellen* had distinguished *Yakama*, but questioned *Yellen's* analysis and observed that it was "bound by *Yakama Nation*, not *Yellen*." Dkt. 29 at 6-7. The Court, however, is also bound by *Regan* itself, and that should be the starting point.

As *Regan* explained, Congress had historically "exempt[ed] from a taxpayer's gross income the interest earned on the obligations [i.e., bonds] of any State." 465 U.S. at 370. However, Congress changed the law to exempt only "registered" bonds, while subjecting "bearer" bonds to taxation, and South Carolina sued to enjoin the tax. *Id.* at 370–72. The Supreme Court held that the AIA did not bar the claim because Congress had "not provided the plaintiff with an alternative legal way to challenge the" tax, *id.* at 373, establishing the exception at issue here. The facts and circumstances in *Regan* parallel those here in every material respect.

#### (a)     Claim by a state.

*Regan* involved a claim by a state—not a private party or other governmental unit—against the federal government. Again, states are "entitled to special solicitude." *Massachusetts*, 549 U.S. at 520.

#### (b)     Claim arises from a federal tax on state residents' income.

South Carolina's alleged injury arose from Congress's decision to tax interest on bearer bonds issued by the state and held by state residents. 465 U.S. at 370–72. As here, the federal government took no direct action against South Carolina, itself. *See id.*

11

(c)     **Claim implicates sovereign state policy.**

South Carolina argued "that the practical effect of [the tax law was] to require it to issue its obligations in registered form," thereby "destroy[ing] its freedom to issue obligations in the form that it chooses." *Id.* at 372. Otherwise, it would need to "pay its bondholder a higher rate of interest on" bearer bonds. *Id.*at 371.

The IRS tries (at 12) to distinguish *Regan* on the basis that "the sovereign interest in *Regan* went to the *state's* issuance of bonds in a form that would require the *state* to pay more," but this purported distinction is nonexistent. If the IRS unlawfully taxes Arizona's tax rebates, Arizona has the same three choices that South Carolina had: (1) do nothing, and watch state money get sucked into federal coffers; (2) change state policy (i.e., never return taxpayer money or do so under a different framework and hope that the result is different); or (3) to the extent Arizona wants to return X dollars to taxpayers, increase the rebate amount to compensate for unlawful federal taxation.

Arizona pled this harm, which leaves the State and South Carolina situated very closely. *See* Compl. ¶ 80 ("State could have pursued alternate policies that would not have resulted in the Unlawfully Taxed Amount being siphoned from Arizona."); *id.* ¶ 81 ("IRS's unlawful determination is so arbitrary, capricious, and inequitable as to constitute an unlawful targeting of Arizona and its taxpayers in a manner that deprives Arizona of its right to make informed budgetary decisions in [its] best interests.").

2.     ***Yakama Nation* is distinguishable and must be read with *Regan*.**

The IRS—echoing the Court's preliminary injunction order—argues (at 6-7) that the AIA bars Arizona's claim under *Yakama Nation* because the claim is purportedly "wholly derivative of its taxpayers' injuries." This is mistaken for multiple reasons.

(a)     ***Regan's* text**

There is no textual support in *Regan* itself for *Yakama Nation's* "derivative" inquiry. On the contrary, *Regan* grounds its analysis in whether the "plaintiff"—not some

other party—has an alternative means to challenge a tax's validity. 465 U.S. at 373. Leaving no guesswork, the Supreme Court explicitly held that the AIA's

> purposes and the circumstances of … enactment … demonstrate that Congress did not intend the Act to apply where an aggrieved party would be required to depend on the mere possibility of persuading a third party to assert his claims. Rather, the [AIA] was intended to apply only when Congress has provided an alternative avenue for an *aggrieved party to litigate its claims on its own behalf.*

*Id.* at 381 (emphasis added).

### (b)    Claims not derivative

In any event, Arizona's claims are *not* wholly derivative of taxpayer claims. Taxpayers could not assert a claim that their equal sovereignty was violated vis-à-vis other states' treatment; nor could taxpayers protect the State's sovereign right to return money to taxpayers free of an unlawful tax. As *Regan* also recognized, "instances in which a third party may raise the constitutional rights of another are the exception rather than the rule." *Id.* at 380; *Mnuchin*, 408 F.Supp.3d at 412 (taxpayer suits would not "afford the State[] … an opportunity to assert the sovereign interests that are threatened" by an unlawful tax). It is therefore doubly wrong to suggest that Arizona's constitutional claims can be tossed aside because they are related to hypothetical taxpayer refund claims.

### (c)    *Yakama Nation* is the factual and legal outlier.

*Yakama Nation* was a very different case than *Regan* or this one. For one thing, the plaintiff was an Indian tribe, not a state, and it was therefore not entitled to the solicitude that states should receive. Further, the tax at issue in *Yakama Nation* was a tobacco excise tax imposed on a tobacco manufacturer, 843 F.3d at 812—i.e., a run-of-the-mill tax on private income, not a tax on interest from sovereign bonds (*Regan*) or on state tax rebates (this case). The sovereign interest in the latter cases is therefore manifestly greater. *See Regan*, 465 U.S. at 372.

Additionally, the tribe in *Yakama Nation* affirmatively demonstrated that its claims were identical to the manufacturer's claims by jointly pleading identical claims alongside

13

the manufacturer and a tribal member. The Court previously questioned this fact's import, given that the tribe was the only party left when the case reached the Ninth Circuit. Dkt. 29 at 6. But the pertinent point is that the parties, by their litigation conduct, admitted and demonstrated that they sought *identical* relief that in substance sought to vindicate the manufacturer's rights. *See* Case No. 2:11-03038-RMP, Dkt. 16 ¶¶ 6.1-6.30. The analog would have been for Arizona to bring a *parens patriae* claim alongside and identical to the claims of individual taxpayers contesting the tax. But Arizona has not brought a *parens patriae* claim; it brought claims to vindicate its sovereign interests, like the plaintiff states in *Regan* and *Yellen*.[3]

### 3.        The IRS's additional authority is unavailing.

The IRS cites (at 10) *Bob Jones University v. Simon*, 416 U.S. 725 (1974) concerning "congressional antipathy" towards actions to enjoin tax collection. But *Bob Jones* was decided before *Regan*—and more significantly, the plaintiff was a private university challenging denial of its tax-exempt status with recourse to alternative remedies. *See id.* at 746 (university could seek review of assessment or pursue a refund suit). These alternative remedies are not available to Arizona. Indeed, to the State's knowledge, this Court would be the first to dismiss a state's lawsuit on AIA grounds.

### 4.        The *Enochs v. Williams Packing* exception also applies.

The AIA is also inapplicable "if it is clear that under no circumstances could the Government ultimately prevail … [and] equity jurisdiction otherwise exists." *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7 (1962). This is a high bar, but Arizona meets it here with respect to at least the IRS's unlawful taxation of nonincome. *See infra* Section II(A); 4/2/24 Tr. at 19:5-6 (IRS's "explanation is severely wanting").

---

[3] Because South Carolina, like the plaintiff states in *Yellen*, challenged a law enacted by Congress that applied equally to all states, it also lost on the merits. *See South Carolina v. Baker*, 485 U.S. 505, 513 (1988) ("South Carolina has not even alleged … that it was singled out …"). Given the Court's recognition that Arizona's suit has facial merit (e.g., 4/2/24 Tr. at 17:7-13) it would be particularly unjust to subject the State to a higher justiciability bar than any other state has faced.

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5.      An exception under the AIA also applies to the DJA.

*Regan* did not reach the DJA, *see* 465 U.S. at 370 n.2, but other courts have understood the *Regan* exception to apply equally to the DJA. *See, e.g.*, *Yamaha Motor Corp., U.S.A. v. United States*, 779 F.Supp. 610, 614 (D.D.C. 1991) (explaining that *Regan* creates an "exception to the bar of the [AIA] and [DJA], opening the courts only to parties in pre-enforcement tax disputes for whom [Congress] has not provided an alternative remedy") (cleaned up); *Burns v. McGill*, 1999 WL 1090818, at *4 (M.D. Tenn. Oct. 13, 1999) (same). In any event, it is undisputed that a party may sue "to restrain the assessment or collection of [a] tax" if the *Regan* or *Williams* exceptions apply. *See* IRS, *Suits Against the United States* ("Revenue Manual"), at § 5.17.5.4(2), https://www.irs.gov/irm/part5/irm_05-017-005.

### C.      The IRS's sovereign immunity arguments are unavailing.

The IRS's sovereign immunity argument (at 7-8) fails for the same reason as its AIA argument. *See* Revenue Manual, at §§ 5.17.5.2, 5.17.5.4(2) (discussing sovereign immunity and explaining that *Regan* and *Williams* established exceptions to the AIA's general bar on suits to restrain tax collection). The IRS's argument also fails because 5 U.S.C. § 702 "enacted a broad, unqualified waiver for all non-monetary claims for relief against federal agencies." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1172 (9th Cir. 2017); *Williams v. Bernhardt*, 2021 WL 2555435, at *2 (D. Ariz. June 22, 2021) (waiver applies broadly "in contexts where the plaintiff seeks 'relief other than money damages' for claims 'that an agency or an officer or employee thereof acted or failed to act in an official capacity'") (citation omitted).

The IRS now tries (at 8 n.4) to characterize Arizona's complaint as seeking "monetary" relief in the form of "refunds," but that is wrong. Only individual taxpayers can seek refunds; Arizona seeks "declaratory and injunctive relief," Compl. ¶ 8, and not

1    refunds or damages.[4] The case that the IRS cites on this issue (at 8 n.4)—*King Mountain*
2    *Tobacco Co., Inc. v. Alcohol & Tobacco Tax & Trade Bureau*—was the district court case
3    in *Yakama Nation* and it is inapposite. There, again, a tobacco manufacturer and other
4    plaintiffs sought a declaration that they were "entitled to a refund and/or abatement of all
5    monies … paid to date," which the district court understood as "equivalent to a request
6    for monetary relief." 2012 WL 12951864, at *3 (E.D. Wash. Sept. 24, 2012). This is *not*
7    the relief Arizona seeks, further illustrating why it would be error to rely on that case.[5]

8            The IRS's related effort (at 8-9) to characterize its determination as something
9    other than "final" for the purpose of APA review is meritless. An action is final if it (1)
10   "mark[s] the consummation of the agency's decision-making process"; and (2) is "one by
11   which rights or obligations have been determined or from which legal consequences will
12   flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). "The finality element
13   must be interpreted in a pragmatic and flexible manner." *Oregon Nat. Desert Ass'n v.*
14   *U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (assessing finality based on whether
15   action is a definitive statement of agency's position, has a direct and immediate effect on
16   operations of party seeking review, or if immediate compliance is expected).

17

18

---

19   [4] Arizona's motion for preliminary injunction used the phrase "atypical monetary injury"
20   in discussing irreparable harm. Dkt. 18 at 19. As the State explained, it was "atypical"
     precisely because the State "is not seeking … monetary relief on behalf of taxpayers." *Id.*
21   References to monetary injury at the April 2 oral argument were contextually similar.

22   [5] Contrary to the IRS's further assertion (at 7 n.3) that Arizona sued Secretary Yellen and
23   Commissioner Werfel for "doing their jobs," Arizona alleges that they are responsible for
     overseeing, implementing, and enforcing the agency defendants' unlawful conduct
24   (Compl. ¶¶ 12, 14, 17). The individuals, like the agencies, are therefore amenable to suit.
     5 U.S.C. § 702 (waiver extends to "officers"). Further, "a suit against a federal official
25   for specific relief is … is not barred by sovereign immunity[] where" actions within the
     scope of an officer's duty are "constitutionally void." *E. V. v. Robinson*, 906 F.3d 1082,
26   1091 (9th Cir. 2018). Arizona has alleged that each of the defendants exercised their
     powers in a constitutionally void manner (Compl. ¶¶ 12, 14, 17, 107-18); and contrary to
27   the IRS's claim that that Arizona has not alleged "any specific actions" by the individuals,
     the IRS's February 15, 2024 letter (Compl. ¶¶ 60, 67-70) was personally signed by
28   Commissioner Werfel. Ex. 12.

1      Here, the Commissioner made a "*determination* that the 2023 Arizona Families

2 Tax Rebate *payments constitute income* to the recipients *for federal income tax purposes*"

3 and stated that the "IRS is *applying the rules reflected in this letter … to Arizona.*" Ex. 12

4 at 1, 3 (IRS letter to Attorney General Mayes) (emphasis added). And contrary to the

5 IRS's litigation refrain (at 4, 9) that it merely gave "advice" that expressed an

6 "administrative position," a letter that establishes an agency's official position on how the

7 law applies to a party's specific facts is a final determination. *See, e.g.*, *Ipsen*

8 *Biopharmaceuticals, Inc. v. Azar*, 943 F.3d 953, 959 (D.C. Cir. 2019) (finding letter

9 applying law to party's specific facts was final).[6]

10 **II.    Arizona has stated claims under each Count of its complaint.**

11      Under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and

12 construed in the light most favorable to the nonmoving party." *Thompson v. Davis*, 295

13 F.3d 890, 895 (9th Cir. 2002). And "[a] complaint should not be dismissed unless it

14 appears beyond doubt that the plaintiff can prove no set of facts in support of the claim

15 that would entitle the plaintiff to relief." *Id.* The IRS's motion to dismiss mischaracterizes

16 authority and previews factual disputes, while providing no basis to dismiss any claim.

17     **A.    The IRS illegally taxed nonincome.**

18      The IRS has repeatedly acknowledged that "[m]ost taxpayers receiving state tax

19 refunds do not have to include the state tax refund in income for federal tax purposes."

20 Ex. 10 at 1 (IR-2023-158) (bold omitted);[7] *see also Tempel v. Comm'r*, 136 T.C. 341, 350

---

[6] *See also, e.g.*, *Idaho Rivers United v. U.S. Forest Serv.*, 857 F. Supp. 2d 1020, 1025–26 (D. Idaho 2012) (letters rejecting request and allowing for certain conduct to continue had "both a practical effect and a legal consequence"); *S. Utah Wilderness All. v. Off. of Surface Mining Reclamation & Enf't*, 620 F.3d 1227, 1244 (10th Cir. 2010) (letter denying request for a discrete agency action was reviewable as final action).

[7] Arizona attached items such as the IRS's 2023 determinations and the Tax Rebate law's text to its motion for preliminary injunction. Dkt. 18-1. For convenience, Arizona cites those same exhibits here, the substance of which Arizona also pled. *See supra* Background. Arizona is not relying on any factual matters outside the pleadings in this section of its brief.

17

1  (2011) ("A reduction in a tax liability is not an accession to wealth."). This remains

2  undisputed, *see* Mot. at 14 ("a refund is not an accession to wealth"), yet the IRS

3  nonetheless still asserts (at 16) that the Tax Rebate is taxable *in full* because it was not

4  facially limited to taxes actually paid. This remains wrong as a matter of law.

5       *Maines v. Commissioner*, the case on which the IRS has relied, plainly holds that

6  only the "*excess portion*" of a tax refund "that remains after first reducing state-tax

7  liability … is an accession to the [taxpayer's] wealth, and [includible] in … federal gross

8  income." 144 T.C. 123, 136 (2015) ("[i]t is only the potentially refundable excess credits

9  that must be included in gross income") (emphasis added). The Court previously appeared

10 to agree that the IRS is mischaracterizing this case (e.g., 4/2/24 Tr. at 10:5-7 (IRS's

11 explanation "doesn't even meet *Maines* at all"); 19:5-6), and nothing has changed on that

12 front. Confusingly, the IRS now even cites (at 15) *Ginsburg v. United States*, 922 F.3d

13 1320 (Fed. Cir. 2019), for "finding [the] excess over [a] state tax credit to be income,"

14 which accords with *Maines* and contradicts the IRS's position.

15      The IRS's assertion (at 16) that "Arizona could have designed refundable tax

16 credits to fit within" *Maines'* "confines" is baffling. As relevant here—and as the Court

17 correctly observed (4/2/24 Tr. at 22:7-9)—*Maines'* import is that if a credit (or rebate)

18 exceeds taxes actually paid, only the excess portion is taxable. *See id.* at 24:9-14 ("[T]here

19 wouldn't even be an issue in *Maines* if it was capped to the amount of the tax credit.").

20 The IRS also suggests (at 15-16) that the credit for current year's taxes in *Maines* is

21 somehow distinguishable from a refund or rebate of a previous year's taxes—but that

22 makes no sense, either, given that the IRS itself relied on *Maines* in its 2023 refund

23 determinations, all of which involved refunds to taxpayers of a previous year's taxes. *See*

24 Ex. 11; 4/2/24 Tr. at 26:9-13; 25:3-9 ("arguing … a distinction without a difference").

25      **B.    The IRS illegally denied applicable exclusions.**

26      Arizona alleges that the IRS subjected the State to discriminatory treatment based

27 on the pretextual and arbitrary denial of the general welfare and disaster relief exclusions.

28

*E.g.*, Compl. ¶¶ 62, 69, 81. The motion (at 17-20) is replete with bare assertions indicative of arbitrary decision-making and bereft of any legal argument supporting dismissal.

### 1.   General welfare exclusion.

The IRS argues (at 17-18) that the Tax Rebate is taxable because it was available above the income limit that "is generally considered to be covered by the general welfare exclusion" and was limited to individuals with tax liability. But tellingly, the IRS does not offer a single citation for either purported criteria. Nor does the IRS acknowledge that IR-2023-23—the guidance issued three months before Arizona enacted the Tax Rebate— necessarily informs what "is generally considered to be covered." Ex. 1; *see also, e.g.*, Compl. ¶ 54 (Colorado: no income cap and no dependents requirement); *id*. ¶ 56 (California: $500,000 income cap and no dependents requirement).

Unable to defend its purported "criteria," the crux of the IRS's position (at 19) is that "[n]o matter what the IRS determined for the 21 states," Arizona's Tax Rebate must "be evaluated on [its] own." But even if the Tax Rebate is "evaluated on [its] own," the IRS admits (at 17) that the general welfare exclusion has been applied to payments targeted at "food, medical care, housing, personal property, [and] transportation," and acknowledges (at 2) that Arizona explicitly enacted the Tax Rebate because "gas, groceries and other necessities [were] out of reach for many Arizonans" due to the inflationary crisis resulting from the COVID-19 pandemic. And in any event, it is unlawful for the IRS to make decisions untethered from recent history because it has a duty of consistency under both the Code and the APA. *See infra* Section II(C)(1), (3); Ex. 12 (IRS letter assuring Arizona "that the rules concerning income inclusion and exclusion are applied fairly and consistently to every state payment").

The IRS (at 18) also faults Arizona for "summarily alleg[ing]" reliance on the February 2023 guidance and asserts that "[e]ven if Arizona could claim reliance, it would have been misplaced." But "reasonable reliance generally is a fact question inappropriate

1  for resolution at the motion to dismiss stage." *Ogdon v. Grand Canyon Univ. Inc.*, 2024

2  WL 1344455, at *4 (D. Ariz. Mar. 29, 2024) (cleaned up).

3  **2.    Disaster relief exclusion.**

4  The IRS's disaster-relief arguments are similarly misplaced. As the IRS

5  acknowledges (at 19), this exclusion is available for payments made "in connection with"

6  a qualified disaster. 26 U.S.C. § 139(b)(4). Contrary to the IRS's suggestion (at 20),

7  neither Section 139 nor IRS guidance limits the disaster relief exclusion to instances

8  where the enacting legislation cites the disaster. And case law instructs that the phrase "in

9  connection with a qualified disaster," the eligibility criteria under 26 U.S.C. § 139(b)(4),

10  requires only a "logical or causal connection." *Whistleblower 972-17W v. Comm'r*, 2022

11  WL 2718766, at *10 (T.C. July 13, 2022) (standard is "quite broad") (cleaned up). The

12  IRS does not dispute this; and factually, the IRS does not dispute that the pandemic was

13  a major cause of record inflation.

14  The IRS was cognizant of the applicable standard under § 139 when it issued IR-

15  2023-23. *See* Ex. 11 (exclusions available for rebates "*related*, directly or *indirectly*, *to*

16  *the various consequences* of the [COVID-19] pandemic"); Ex. 1 (payments "related to

17  the pandemic and *its associated consequences*" receive exclusions) (emphasis added).

18  But now the IRS offers only contradictory pretexts for its discrimination. It asserts (e.g.,

19  at 4) that "consistent with the guidance expressed in Notice 2023-56, any label given to a

20  payment made under state law is not controlling for federal tax purposes." But then the

21  IRS faults Arizona (at 18) for, among other things, not referencing (i) "the COVID-19

22  pandemic or … the federally declared disaster"; (ii) "the IRS's statement on the 2022

23  payments"; (iii) whether "Arizona modeled its program after any of the 21 states that

24  received … desired tax treatment"; or (iv) "that Arizona expect[ed] the[] [Rebate] to be

25  excluded from federal income tax based on the general welfare or disaster relief

26  exclusions." Whatever weight these arguments warrant, they are not pleadings arguments.

27

28

20

C.    **Arizona has stated statutory and constitutional claims based on the IRS's illegal determinations.**

The IRS's motion has very little to say about the claims that Arizona has actually pled, each of which states a claim.

1.    **Denying applicable exclusions violates the Tax Code (Count 1).**

The IRS concedes (at 17) that it has allowed income exclusions under 26 U.S.C. § 61 "for nearly 100 years." And the IRS has promised that it will "not take positions inconsistent with its subregulatory guidance when such guidance is in effect." *See* Dept. of Treasury, *Policy Statement on The Tax Regulatory Process* (Mar. 5, 2019), https://home.treasury.gov/system/files/131/Policy-Statement-on-the-Tax-RegulatoryProcess-3-4-19.pdf; *see also Est. of McLendon v. Comm'r*, 135 F.3d 1017, 1024 (5th Cir. 1998) (holding that the IRS cannot depart from its own guidance in a manner that "retroactively abrogate[s] a ruling in an unclear area" and finding reliance on revenue ruling appropriate). Additionally, 26 U.S.C. § 139 codified the disaster relief exclusion, further constraining the IRS's action. *Id.* § 139(a) ("Gross income *shall not* include any amount received by an individual as a qualified disaster relief payment.") (emphasis added). The IRS provides no genuine legal argument supporting dismissal of this claim; rather, it merely asserts (at 17-19), without citation, the existence of seemingly ad hoc criteria that it has not consistently applied.

2.    **Taxing nonincome is unconstitutional and violates the Tax Code (Counts 2, 3).**

The IRS has authority to tax *income* from whatever source derived. U.S. Const. art. I, § 8; U.S. Const. amend. XVI; 26 U.S.C. § 61; *see also Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955) ("undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion" are taxable as gross income). The unlawful taxation of nonincome violates federal taxing power under Article I and the Sixteenth Amendment to the U.S. Constitution, as well as 26 U.S.C. § 61 and 26 CFR § 1.61-1. *See, e.g.*, *Eisner v. Macomber*, 252 U.S. 189, 219 (1920) (statute purporting to

21

tax nonincome violated the Sixteenth amendment and was "invalid"); *Hirsch v. Comm'r*, 115 F.2d 656, 657–58 (7th Cir. 1940) (IRS violated the Revenue Act by treating credit that reduced the purchase price of property as taxable income). The IRS has no valid defense to these claims, let alone any plausible argument for dismissal.

### 3.   Both determinations violate the APA (Count 4).

Under the APA, a court "*shall* … hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (emphasis added); *id.* § 706(2)(B), (C) (agency action shall also be set aside if it is "contrary to constitutional right, power, privilege, or immunity" or "in excess of statutory jurisdiction …").

The APA requires a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). And an agency has a heightened duty requiring a more detailed justification for its action when it "has engendered serious reliance interests that must be taken into account." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (agency must provide a "reasoned explanation" for changing positions that displays awareness of doing so and "good reasons for the new policy"). Departing from recent determinations without explaining the inconsistency is the epitome of an arbitrary and capricious action. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016) (unexplained inconsistency in a changed agency policy is arbitrary and capricious). The IRS previews factual disputes (e.g., at 18 (arguing Arizona's reliance was "misplaced")) but provides no plausible argument that Arizona has failed to state a claim under the arbitrary and capricious standard. And the nonincome determination necessarily violates the APA because it was unlawful (§ 706(2)(A)) and unconstitutional (§ 706(2)(B)).

### 4.   Both determinations violate equal sovereignty (Count 5).

"[T]he fundamental principle of equal sovereignty remains highly pertinent in assessing … disparate treatment of States." *Shelby Cnty., Ala. v. Holder*, 570 U.S. 529,

544 (2013). Under equal sovereignty, laws that differentiate between the States may only be upheld upon showing disparate treatment is sufficiently related to the problems targeted by the law. *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 203 (2009); *see also, e.g., Texas v. Yellen,* 2022 WL 989733, at *11 (N.D. Tex. Mar. 4, 2022) (recognizing that "[t]he U.S. Supreme Court recognizes the taxation authority of state governments as a traditional power central to state sovereignty" and denying motion to dismiss equal sovereignty claim relating to tax mandate in COVID-19 relief bill).

The IRS asserts (at 8) that this claim "read[s] in substance as a challenge[] to income determinations under § 61." Even if true, that is not a valid basis for dismissal, but it is also wrong. When the IRS illegally taxes nonincome or unlawfully denies applicable exclusions, it violates the tax code; when it does so in discriminatory fashion, it violates equal sovereignty. The Second Circuit dismissed the states' equal sovereignty claim in *Yellen* because the SALT deduction cap's alleged disparate impact arose out of disparate state tax policies, "not because the cap applies to some States but not others." 15 F.4th at 584. Here, the disparate treatment cannot reasonably be disputed (let alone resolved on the pleadings); the IRS gave twenty-one states the benefit of exclusions or the lawful application of the nonincome rule, yet it denied both to Arizona.

In *Shelby County*, the Supreme Court was particularly troubled by Congress's "reverse-engineer[ing]," whereby it "identified the jurisdiction to be covered and *then* came up with criteria to describe them." 570 U.S. at 551. The IRS's post hoc rationalizations in this case have all the hallmarks of such reverse engineering, insofar as the purported relevant standards and the "right" legislative magic words just happen to be whatever provides a fig leaf for the discrimination. The IRS is free to dispute this, but that is what discovery is for.

## CONCLUSION

For the foregoing reasons, the Court should deny the IRS's motion to dismiss.

RESPECTFULLY SUBMITTED this 29th day of May, 2024.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

By: */s/ Clinten N. Garrett*

Joshua D. Bendor (Bar No. 031908)
Alexander W. Samuels (Bar No. 028926)
Clinten N. Garrett (Bar No. 022457)
Kathryn E. Boughton (Bar No. 036105)
Office of the Arizona Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-3333
Joshua.Bendor@azag.gov
Alexander.Samuels@azag.gov
Clinten.Garrett@azag.gov
Kathryn.Boughton@azag.gov
ACL@azag.gov

*Attorneys for Plaintiff State of Arizona*