**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, | No. CV-24-00355-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| United States Internal Revenue Service, Daniel I. Werfel, United States Department of Treasury, Janet Louise Yellen, and United States of America, | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss (Doc. 32), filed by Secretary of the U.S. Department of Treasury Janet Yellen, IRS Commissioner Daniel Werfel, the IRS, and the United States of America, pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6). For the following reasons, the Court grants the IRS's Motion to Dismiss pursuant to Rule 12(b)(1) for lack of standing.

## BACKGROUND

Attorney General Kris Mayes filed this lawsuit on behalf of Plaintiff State of Arizona ("Arizona"). (Doc. 1 at 3). Arizona names as Defendants Janet Yellen, in her official capacity as the Secretary of the U.S. Department of Treasury; Daniel Werfel, in his official capacity as the IRS Commissioner; the IRS; and the United States of America (collectively the "IRS"). (*Id.* at 4). Arizona brings the following claims against the IRS: unlawful denial of general welfare under 26 U.S.C. § 61, and unlawful taxation of non-income under 26 U.S.C. § 61, a violation of Congress' taxing power under the U.S.

Constitution, a violation of the principle of equal sovereignty under the U.S. Constitution, and a violation of 5 U.S.C. § 706.  (*Id.* at 15-19).

In February 2023, the IRS issued guidance to clarify "the federal tax status involving special payments made by 21 states in 2022."  (*Id.* at 4).  The IRS stated, "If a payment is made for the promotion of the general welfare or as a disaster relief payment, for example related to the outgoing pandemic, it may be excludable for federal tax purposes."  (*Id.* at 5).  The IRS further stated that the determination of "whether payments qualify for these exceptions is a complex fact intensive inquiry that depends on a number of considerations." (*Id.*).  Accordingly, the IRS determined that the payments made by 21 states "were nontaxable in whole or in part."  (Doc. 1 at 6).

In May 2023, Arizona enacted the Arizona Tax Rebate ("Rebate"), which was a one-time rebate that "returned tax revenue to taxpayers who (a) had dependents; (b) had met the income threshold to claim the Dependent Tax Credit; and (c) had paid state income tax in a year between 2019 and 2021."  (*Id.* at 2).  The Rebate provided "$250 for each dependent under age seventeen and $100 for dependents age seventeen or older, capped at $750 per taxpayer."  (*Id.* at 6).

In August 2023, the IRS issued another notice "to describe the rules that the [IRS] applies in determining the federal income tax consequences of refunds of State or local taxes and certain other payments made by State or local governments . . . to individuals." (*Id.* at 7).  In this notice, the IRS allegedly affirmed its February 2023 guidance.  (*Id.*).  In an accompanying news release, the IRS stated, "Most taxpayers receiving state tax refunds do not have to include the state tax refund in income for federal tax purposes."  (*Id.* at 9).

In December 2023, the IRS informed the Arizona Department of Revenue in a video meeting that the Rebate was "federally taxable in full."  (Doc. 1 at 10).  The IRS did not explain this decision until February 15, 2024, when the IRS stated that the determination of "whether payment programs qualify for an exclusion requires a fact-intensive analysis." (*Id.* at 11).

The Arizona Department of Revenue conveyed the IRS's decision to Arizona

2

taxpayers, who paid "an estimated $20.8 million to the IRS." (*Id.* at 1, 13).  The Arizona Department of Revenue calculated that the IRS's decision to impose federal taxes on the Rebate deprived Arizona of "approximately $480,000 in state and local transaction privilege tax revenue that would have been derived from taxpayers' spending." (*Id.* at 13). Arizona also alleges that the IRS deprived "Arizona and its taxpayers of consistent and equitable treatment" because the IRS determined that the Rebate was taxable, but that other state refund programs were nontaxable. (*Id.* at 11, 9).

On February 12, 2024, Arizona filed its complaint, requesting injunctive and declaratory relief to enjoin the IRS from federally taxing the Rebate. (Doc. 1).  On April 29, 2024, the IRS filed a Motion to Dismiss, seeking dismissal on two primary grounds: (1) lack of subject matter jurisdiction pursuant to Rule 12(b)(1); and (2) failure to state a claim pursuant to Rule 12(b)(6). (Doc. 32).

## DISCUSSION

### I.    Legal Standard

The Court may reach the merits of a dispute only if it has jurisdiction to do so. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-95 (1998).  Jurisdiction is limited to subject matter authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Under Rule 12(b)(1), a defendant may challenge at any time a federal court's jurisdiction to hear a case. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3). Such a challenge may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A facial challenge asserts that the complaint, on its face, fails to allege facts that would invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial challenge to subject-matter jurisdiction under Rule 12(b)(1), the court must accept as true all material allegations in the complaint and construe the complaint in favor of the plaintiff. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).  A factual challenge disputes the veracity of allegations in the complaint that would otherwise invoke federal jurisdiction, *Safe Air for Everyone*, 373 F.3d at 1039, and the court may look beyond the complaint when resolving a factual challenge to subject-

matter jurisdiction, *White*, 227 F.3d at 1242.

### a. Standing

A plaintiff seeking "to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *Maya*, 658 F.3d 1060, 1067 (9th Cir. 2011) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)).  Standing is a component of the "case-or-controversy" requirement and serves to ensure that the plaintiff is "a proper party to invoke judicial resolution of the dispute." *Warth v. Seldin*, 422 U.S. 490, 518 (1975)

To have standing for injunctive relief under Article III, a plaintiff must show (1) it is under a threat of suffering an "injury in fact" that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  At "the pleading stage, the plaintiff must clearly allege facts demonstrating each element" of standing. *Spokeo v. Robins*, 578 U.S. 330, 338 (2016).

In its Rule 12(b)(1) Motion to Dismiss, the IRS makes a facial challenge to Arizona's standing.  (Doc. 32 at 10-13).  Accepting Arizona's allegations in the Complaint as true, the Court finds that Arizona fails to establish an injury in fact.

### i. Loss of Tax Revenue

Arizona argues that it has standing for all of its claims because the IRS's decision to impose federal taxes on the Rebate caused the state to suffer a loss of tax revenue.  (*See* Doc. 1 at 3, 13).  But federal courts have held that the loss of state tax revenue generally does not constitute an injury in fact for the purposes of standing. *Kansas v. Biden*, No. 24-1057, 2024 WL 2880404, at *16 (D. Kan. June 7, 2024) (holding that "reduced state tax revenue doesn't qualify as an injury in fact sufficient to confer standing on a state"); *Com. of Pa., by Shapp v. Kleppe*, 533 F.2d 668, 672 (D.D.C. 1976) ("[T]he unavoidable economic repercussions of virtually all federal policies, and the nature of the federal union as embodying a division of national and state powers, suggest to us that impairment of state

tax revenues should not, in general, be recognized as sufficient injury in fact to support state standing."); *XY Planning Network, LLC v. United States Sec. and Exch. Comm'n*, 963 F.3d 244, 253 (2d. Cir. 2020) (holding that a state lacked Article III standing on the basis of a loss of tax revenue in part because the ultimate tax revenue in a state "is driven by countless variables"); *State of Florida v. Mellon*, 273 U.S. 12, 18 (1927) (holding that a state is not entitled to sue to enjoin the collection of federal taxes because "not only is the state's right of taxation subordinate to that of the general government, but the anticipated result [of diminished tax revenue] is purely speculative, at most, only remote and indirect").

Moreover, Arizona has not shown a "direct injury in the form of a loss of specific tax revenues." *Wyoming v. Oklahoma*, 502 U.S. 437, 448 (1992). In its Complaint, Arizona states that the Arizona Department of Revenue calculated that the IRS's decision deprived Arizona "of approximately $480,000" in tax revenue. (Doc. 1 at 13). This theory of injury, however, is derivative and speculative. This theory is derivative of an alleged harm to the Arizona taxpayers who paid the federal tax and depends on a number of assumptions regarding how the taxpayers would have spent their money otherwise. If accepted by the Court, this broad theory of injury for standing would allow Arizona to challenge any assessment of federal tax on the speculative notion that Arizona taxpayers would spend the amount that they would have otherwise paid in federal taxes on purchases that are subject to Arizona state or local taxes. In fact, the only certainty regarding how Arizona taxpayers would have decided to spend the money that they otherwise paid in federal taxes is, as Arizona itself states, that "Arizona taxpayers would have retained the [money] to spend as they saw fit." (Doc. 1 at 13). Arizona has not demonstrated a direct link between the IRS's decision and its loss of state tax revenue, relying instead on a causal chain that is too attenuated to support standing in this case. *See XY Planning Network, LLC v. United States Sec. and Exch. Comm'n*, 963 F.3d 244, 253 (2d. Cir. 2020) (holding that a state's theory of standing regarding diminished tax revenue fails because it "rests too heavily on conclusory statements and speculative economic data").

### ii. Sovereign Injury

Arizona also argues that it faced a "sovereign injury" because the IRS determined that 21 state payments and refunds "were nontaxable in whole or in part, then discriminated against Arizona's Tax Rebate, enacted three months later, by denying it the same treatment." (Doc. 40 at 17). Arizona, however, has not alleged sufficient facts to demonstrate an injury because of the IRS's alleged unequal treatment of similarly situated states. The IRS's guidance in February 2023 "clarified the federal tax status involving special payments made by 21 states in 2022." (Doc. 1 at 4). The IRS's February 2023 guidance, therefore, applied to only the 21 states that made special, one-time payments in the 2022 tax year.[1] Arizona does not fall within that group of states. Arizona made its "onetime income tax general welfare rebate" in May 2023, (Doc. 1 at 6), which occurred in the 2023 tax year, when, among other things, the effects of COVID were different than they were in the 2022 tax year. In its Complaint and Response to the IRS's Motion to Dismiss, however, Arizona fails to reference a single state that made a one-time payment in the 2023 tax year but received different treatment than Arizona received from the IRS. (*See* Doc. 1; *see also* Doc. 40). And, during oral argument on October 23, 2024, Arizona was unable to point to a state that made a payment in the 2023 tax year and received different treatment from the IRS. Arizona references only the states in the 2022 tax year, (*see* Doc. 1 at 9-10), but since Arizona is not similarly situated with those states that issued special, one-time payments in the 2022 tax year, the IRS's alleged treatment of those states does not support a claim of unequal treatment.

Further, even if Arizona had brought sufficient facts to show that it experienced an injury because the IRS allegedly made a different tax determination regarding a similarly situated state's one-time payment in the 2023 tax year, such disparity in federal taxing would not necessarily constitute an injury in fact for the purposes of Article III standing. In *State of Florida v. Mellon*, the Supreme Court addressed whether an alleged lack of

---

[1] Arizona recognizes in its Complaint that the "IRS purported to state that its February 2023 guidance applied only for payments made in 2022." (Doc. 1 at 7).

uniformity in the application of the federal collection of taxes may constitute a harm sufficient to confer standing. 273 U.S. at 17. The Supreme Court held, "The contention that the federal tax is not uniform . . . is without merit. Congress cannot accommodate its legislation to the conflicting or dissimilar laws of the several states, nor control the diverse conditions to be found in the various states, which necessarily work unlike results from the enforcement of the same tax. All that the Constitution . . . requires is that the law shall be uniform in the sense that by its provisions the rule of liability shall be alike in all parts of the United States." *Id.* Here, the IRS applied the same "complex fact intensive inquiry" in deciding whether to impose federal taxes on the Arizona Rebate, just as any other state. The mere fact that the "complex fact intensive inquiry" may have yielded different results in the IRS's decision to impose federal taxes on the Arizona Rebate as opposed to another state's payment does not constitute sufficient injury for standing.[2] *See State of Florida*, 273 U.S. at 17.

### iii. *South Carolina v. Regan*

At oral argument on October 23, 2024, Arizona argued that it has standing in this case because the state of South Carolina was able to bring a claim against the federal government regarding federal taxing in *South Carolina v. Regan*, 465 U.S. 367 (1984). This case, however, is distinguishable from *South Carolina v. Regan*.

In *South Carolina v. Regan*, Congress amended Section 103(a) of the Internal Revenue Code to restrict the types of bonds that qualify for a tax exemption. *Id.* at 371. South Carolina argued that the "practical effect" of the amendment was to require the state to issue only a certain type of bonds to its citizens, and the amendment "destroys its freedom to issue obligations in the form that it chooses." *Id.* at 371-72. South Carolina further argued that the amendment would force the state to pay its bondholders a higher

---

[2] The IRS announced in its February 2023 guidance that the determination of "whether payments qualify for [exceptions to federal taxing] is a complex fact intensive inquiry that depends on a number of considerations." (Doc. 1 at 5). The IRS affirmed that guidance in August 2023. (*Id.* at 7). When the IRS decided to impose federal taxes on the Arizona Rebate in December 2023, the IRS explained that the determination of "whether payment programs qualify for an exclusion requires a fact-intensive analysis." (*Id.* at 11).

1    rate of interest on such bonds.  *Id.*  In other words, Congress's amendment of Section 103(a)

2    allegedly caused injury to South Carolina by restricting the state's ability to make decisions

3    and forcing the state to pay more money to its citizens.  Article III standing was not at issue

4    in the majority opinion for *South Carolina v. Regan*.  *See id.* at 370-82.

5        Here, the IRS's imposition of a federal tax does not require Arizona to take any

6    action, restrict Arizona's actions, or force Arizona to pay more money to its citizens.  The

7    IRS's imposition of a federal tax does not have any alleged effect on Arizona besides the

8    prospect of the state receiving a diminished tax revenue.  Since the facts of this case are

9    wholly distinguishable, *South Carolina v. Regan* does not provide Arizona with a

10   successful basis to show that the state has Article III standing here.

11   **II.    Conclusion**

12       Thus, Arizona has failed to establish the sufficient injury in fact necessary to confer

13   standing to bring any of its claims.  Accordingly, the Court grants the IRS's Motion to

14   Dismiss pursuant to Rule 12(b)(1) for lack of standing.  The Court lacks subject matter

15   jurisdiction to consider the merits of Arizona's Complaint and need not consider the IRS's

16   Motion to Dismiss pursuant to Rule 12(b)(6).  Since the defects in the Complaint cannot

17   be cured by amendment, the Court dismisses Arizona's Complaint with prejudice.

18       **IT IS THEREFORE ORDERED** that Defendants Secretary of the U.S.

19   Department of Treasury Janet Yellen, IRS Commissioner Daniel Werfel, the IRS, and the

20   United States of America's Motion to Dismiss (Doc. 32) is **GRANTED**.

21       **IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this action

22   and enter judgment accordingly.

23       Dated this 15th day of November, 2024.

24

25       G. Murray Snow

26       Senior United States District Judge

27

28